**Michael R. PITKA, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. A–7598.**

Court of Appeals of Alaska.

March 16, 2001.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

W.H. Hawley, Jr., Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

---

## OPINION

MANNHEIMER, Judge.

This case raises an issue concerning the proper application of Criminal Rule 45(c)(1). This rule governs calculation of the time for bringing a defendant to trial on additional charges that are filed after the initial complaint or indictment. The rule states that the same Rule 45 calculation governs all charges arising out of the "same criminal episode" unless the later charges are based on newly-discovered evidence.

Pitka was initially charged with two crimes, and then later indicted for a third. He argues that, even though the third charge was filed many months later, the speedy trial clock started running for this third charge on the same day that the initial two charges were filed—meaning that the time for bringing Pitka to trial on this third charge had already expired by the time it was filed. For the reasons explained here, we conclude that the third charge was not part of the same criminal episode as the initial two charges, and thus the third charge was governed by its own separate Rule 45 calculation.

Pitka also raises a sentencing issue: he contends that the superior court committed error when it found that the State had proved an aggravating factor. Based on our review of the record, we conclude that the superior court was not clearly erroneous in finding this aggravator.

### The Rule 45 issue

On December 13, 1998, State Trooper Dane Gilmore was dispatched to a reported domestic disturbance in a Fairbanks apartment. Gilmore found a man and a woman in the apartment. The woman, Alexa Crow, told Gilmore that the man—the Appellant, Michael R. Pitka—had come to the apartment in violation of a restraining order. Crow said that when she directed Pitka to leave, Pitka overturned the kitchen table, causing damage of about $100. Upon receiving this information, Gilmore arrested Pitka for the offenses of criminal trespass and criminal mischief.

When Gilmore arrested Pitka, he searched the inside pocket of Pitka's vest and found a baggie containing a little less than one ounce of white powder. A field test of this powder indicated that it was cocaine. Three months later, on March 22, 1999, the State Crime Lab reported that this substance was indeed 21.1 grams of cocaine.

On the day following Pitka's arrest (i.e., on December 14, 1998), the State filed a complaint charging Pitka with criminal trespass and criminal mischief. However, the State did not indict Pitka for possession of cocaine (third-degree misconduct involving a controlled substance) until half a year later, on July 14, 1999.

Criminal Rule 45(c)(1) states that the time for bringing a defendant to trial begins to run "from the date the charging document is served upon the defendant". Thus, with regard to Pitka's charges of criminal trespass and criminal mischief, Rule 45 commenced running on December 14, 1998. The question presented in this appeal is whether Rule 45 also commenced running on December 14th with respect to the yet-to-be-filed possession of cocaine charge. The answer to this question turns on the proper application of Criminal Rule 45(c)(3).

Criminal Rule 45(c)(3) deals with the issue of later-filed charges. The first sentence of this subsection states:

> *New Charges.* The Rule 45 commencement date for a new charge arising out of the same criminal episode shall be the same as the commencement date for the original charge, unless the evidence on which the new charge is based was not available to the prosecution on the commencement date for the original charge.

Under this rule, calculation of the Rule 45 commencement date for Pitka's cocaine charge hinges on whether that cocaine charge "[arose] out of the same criminal episode" as Pitka's criminal trespass and criminal mischief charges. If so, then the Rule 45 commencement date for the cocaine charge would be the same as the commencement date for the other two charges—December 14, 1998—unless the cocaine charge was based on previously unavailable evidence. But if the cocaine charge did not arise from the "same criminal episode", then the State

was free to file the cocaine charge later, without regard to the Rule 45 deadline for bringing Pitka to trial on the criminal trespass and criminal mischief charges.

Pitka asserts that his cocaine charge arose from the same criminal episode as his criminal trespass and criminal mischief charges. He points out that Trooper Gilmore found the cocaine while he was arresting Pitka for criminal trespass and criminal mischief. That is, the cocaine would not have been discovered had the troopers not been summoned to deal with Pitka's other two crimes. Moreover, the fact that the cocaine was found in Pitka's pocket at the time of his arrest indicated that Pitka was in possession of the cocaine while he was committing the other two crimes. Based on these factors, Pitka contends that his possession of cocaine was part of the "same criminal episode" as his acts of trespass and criminal mischief. But this court's decision in *State v. Dunten*[1] shows that Pitka's interpretation of "same criminal episode" is mistaken.

The defendant in *Dunten* shot and killed her husband while she was driving him home from a bar. She then drove to a nearby home and reported the homicide to the Alaska State Troopers.[2] When the troopers arrived to investigate, they gave Dunten a breath test and found that she was intoxicated. Based on the breath test result, the troopers placed Dunten under arrest for driving while intoxicated before questioning her further about the homicide.[3] The State filed no other charge against Dunten until eighteen months later, when Dunten was indicted for second-degree murder.[4]

After she was charged with murder, Dunten asked the superior court to dismiss this charge for violation of Criminal Rule 45. She argued that the murder charge arose from the same criminal episode as the DWI charge, that the Rule 45 commencement date for both charges was therefore the same, and thus the time for bringing her to trial on the

murder charge had already expired.[5] The superior court was persuaded by this argument and dismissed the murder charge[6], but this court reversed the superior court and reinstated the murder charge.[7]

We held that "temporal proximity" does not, by itself, establish that two charges arise from the "same criminal episode" for purposes of Criminal Rule 45:

> [S]eparate charges [do not] arise from the same criminal episode merely because they occurred simultaneously or at closely related times.... [S]ome additional [factor]—either a causal link or a close evidentiary or elemental nexus—[is needed to justify] the finding of a single criminal episode.

*Dunten*, 785 P.2d at 909. We then explained why, in Dunten's case, the DWI charge and the murder charge did not constitute the "same criminal episode":

> Dunten's case involves two charges that are related almost exclusively by their temporal proximity. The statutory elements of the two offenses are entirely different. The homicide charge is not causally related to the earlier DWI charge. The evidence necessary to establish the initial charge of DWI certainly differs significantly from that which would be necessary to establish the subsequent charge of second-degree murder.

*Id.* at 911.

We reached this conclusion even though Dunten's intoxication arguably played a role in her decision to shoot her husband, or arguably was important to a proper assessment of her culpable mental state at the time of the shooting:

> Even though proof of Dunten's intoxication may be a cornerstone of the state's proof of her culpable mental state in the homicide case, intoxication is not an essential element of the murder charge, as it is in the case of DWI. Moreover, proof that Dunten was driving shortly before and af-

1. 785 P.2d 907 (Alaska App.1990).

2. *See id.* at 907.

3. *See id.*

4. *See id.* at 908.

5. *See id.*

6. *See id.*

7. *See id.* at 911.

ter the homicide has virtually no bearing on the murder charge. Assuming a causal relationship existed between Dunten's intoxication and her decision to shoot her husband, it seems clear that no similar relationship exists with regard to the DWI charge[.]

*Id.*

Our analysis in *Dunten* applies with equal force to the facts of Pitka's case. Pitka violated a restraining order by returning to Crow's residence, and he damaged her property when she asked him to leave. When Trooper Gilmore arrived and arrested Pitka for these two crimes (criminal trespass and criminal mischief), Gilmore discovered cocaine in Pitka's vest pocket. This cocaine had "virtually no bearing" on the trespass and criminal mischief charges. Possession of cocaine is not an element of those charges. Pitka has not suggested that his acts of trespass and criminal mischief were motivated by a desire to obtain or sell cocaine, or that these acts were related in any other way to his possession of cocaine.

There is evidence that Pitka was intoxicated when he came to Crow's residence. Although Pitka has not argued this, it is possible to infer that Pitka's intoxication was due, at least in part, to his earlier consumption of cocaine. Thus, the fact that cocaine was found in Pitka's pocket shortly after his arrest may arguably have some relevance to his prosecution for criminal trespass and criminal mischief.

But even if Pitka's possession of cocaine has some arguable relevance to the trespass and criminal mischief charges, the degree to which this evidence might be relevant is certainly less than in *Dunten*. In that case, Dunten's intoxication had obvious and substantial relevance to the second-degree murder charge against her—and even that degree of relevance was deemed insufficient to make the second-degree murder charge part

of the "same criminal episode" as the DWI charge.

We reach a similar legal conclusion in Pitka's case. Given the circumstances of Pitka's three offenses, the temporal relationship between Pitka's acts of trespass and criminal mischief, on the one hand, and Pitka's act of possessing cocaine, on the other, "appears to be wholly fortuitous".[8] Because there was no nexus between these crimes other than their simultaneity, we agree with the superior court that Pitka's crime of possessing cocaine was not part of the "same criminal episode" as his crimes of trespass and criminal mischief.

Accordingly, the Rule 45 commencement date for the cocaine charge was the date on which that charge was served on Pitka—not the earlier time when he was served with the criminal trespass and criminal mischief charges. The superior court correctly denied Pitka's motion to dismiss.

*The superior court's finding of aggravator AS 12.55.155(c)(10)*

After the superior court denied Pitka's Rule 45 motion to dismiss, Pitka pleaded no contest to possession of cocaine (fourth-degree misconduct involving a controlled substance).

■ This offense is a class C felony.[9] Pitka was a first felony offender, so no presumptive term applied to his sentencing. However, the superior court's sentencing discretion was limited by the rule announced by this court in *Austin v. State*—the rule that, in the absence of statutory aggravating factors defined in AS 12.55.155(c) or extraordinary circumstances defined in AS 12.55.165(a), "a first offender should receive a more favorable sentence than the presumptive sentence for a second offender".[10] The presumptive term for a second felony offender convicted of a class C felony is 2 years' imprisonment.[11]

---

8. *Id.*

9. AS 11.71.040(d).

10. 627 P.2d 657, 657–58 (Alaska App.1981). *See Brezenoff v. State*, 658 P.2d 1359, 1362 (Alaska App.1983) (holding that the *Austin* ceiling can be

exceeded only when the State proves statutory aggravating factors or extraordinary circumstances).

11. AS 12.55.125(e)(1).

The State alleged two aggravating factors under AS 12.55.155(c). First, the State alleged aggravator (c)(10)—that Pitka's offense (simple possession of cocaine) was among the most serious in its class because Pitka possessed so large an amount (21.1 grams) that he must have intended to sell the drug. (Possession for purposes of sale is a higher degree of crime.[12]) Second, the State alleged aggravator (c)(21)—that Pitka had a criminal history of similar offenses, based on three prior complaints for illegal possession of controlled substances (marijuana and cocaine) with intent to deliver.

Superior Court Judge Mary E. Greene found that the State had proved both of these aggravators. With particular respect to aggravator (c)(10), Judge Greene concluded that although Pitka was only charged with simple possession, Pitka was actually guilty of a higher degree of crime because he possessed the cocaine for the purpose of selling it. Having found these two aggravating factors, the court sentenced Pitka to 2 years' imprisonment.

In keeping with *Austin*'s requirement that a first felony offender's term of imprisonment should ordinarily be "more favorable" than the presumptive term that applies to second felony offenders, we have consistently required the State to prove aggravating factors or extraordinary circumstances whenever "the actual period of imprisonment *equals or exceeds* the presumptive term for a second offender".[13] Because Pitka's sentence equals the presumptive term for a second felony offender, the superior court's findings of aggravators (c)(10) and (c)(21) are essential to the validity of Pitka's sentence under the *Austin* rule.

On appeal, Pitka challenges the superior court's finding of aggravator (c)(10). He argues that the court was clearly erroneous in finding that he possessed the cocaine with

intent to sell it. Pitka further contends that, because aggravating factor (c)(10) was not adequately proved, we should direct the superior court to reconsider his sentence.

The State responds that Pitka's claim is moot. The State contends that it does not matter whether aggravator (c)(10) was supported by the evidence because no aggravator was required.

The State's argument is based on the legislature's enactment of AS 12.55.125(k).[14] This statute is seemingly a codification of the *Austin* rule, but it differs from *Austin* in one respect: *Austin* requires proof of aggravating factors or extraordinary circumstances if the defendant's sentence *equals or exceeds* the presumptive term for a second felony offender, but the statute requires aggravating factors or extraordinary circumstances only if the defendant's sentence *exceeds* the presumptive term for a second felony offender.

Pitka's case presents a situation in which this distinction makes a difference. If we apply the *Austin* rule, the superior court's finding of aggravator (c)(10) is necessary to the validity of his sentence. But if we apply AS 12.55.125(k), then the State is correct—the aggravator is not required to support the sentence, and thus it does not matter whether the record supports the superior court's finding.

The State presents a colorable argument that the *Austin* rule has been superseded by AS 12.55.125(k). However, to decide Pitka's case, we do not have to resolve this discrepancy between the *Austin* rule and AS 12.55.125(k). We need not decide this issue because the record supports the superior court's finding of aggravator (c)(10).

As explained above, Judge Greene actually found two aggravating factors: (c)(10) and (c)(21). On appeal, Pitka does not challenge

---

12. AS 11.71.030(a)(1).

13. *Brezenoff v. State*, 658 P.2d 1359, 1362 (Alaska App.1983) (emphasis added).

14. This statute reads: "A first felony offender convicted of an offense for which a presumptive term of imprisonment is not specified ... may not be sentenced to a term of unsuspended imprisonment that exceeds the presumptive term for a second felony offender convicted of the same crime unless the court finds by clear and convincing evidence that an aggravating factor under AS 12.55.155(c) is present, or that circumstances exist that would warrant a referral to the three-judge [sentencing] panel under AS 12.55.165."

the finding of aggravator (c)(21), but Pitka argues that Judge Greene erred in finding aggravator (c)(10).

When Judge Greene found that the State had proved aggravator (c)(10), she relied primarily on two factors: the amount of cocaine found in Pitka's possession, and Pitka's statement in the pre-sentence report about his personal drug use.

As noted above, Pitka had 21.1 grams of cocaine in his pocket. According to the testimony presented at grand jury, this amount of cocaine had a "street value" of approximately $2000. Pitka told the pre-sentence investigator that he used cocaine "mostly on weekends, when he might consume up to a gram." The pre-sentence investigator noted that, given Pitka's self-declared rate of consumption, the amount in his vest pocket represented "a 21 week supply". Judge Greene concluded that Pitka would not carry such a large amount unless he intended to sell it.

When a defendant challenges a sentencing judge's findings concerning the existence of aggravating and mitigating factors, we are to uphold the judge's findings unless they are shown to be clearly erroneous.[15] Having examined the record, we conclude that it supports Judge Greene's finding of aggravator (c)(10).

(As explained above, Judge Greene found that the State had proved two aggravators: (c)(10) and (c)(21). Because we conclude that the record supports Judge Greene's finding of aggravator (c)(10), we need not resolve whether the other aggravator, (c)(21), would independently support Pitka's sentence of 2 years to serve.)

*Pitka's claim that his sentence is excessive*

 Pitka contends that, even if his 2–year sentence was lawfully imposed, the sentence is excessive. Because Pitka's term of imprisonment does not exceed 2 years, this court has no jurisdiction to decide Pitka's claim.[16] Pursuant to Appellate Rule 215(k), we refer Pitka's excessive sentence claim to the supreme court.

*Conclusion*

Pitka's excessive sentence claim is referred to the supreme court. In all other respects, the judgement of the superior court is AFFIRMED.

---

**15.** *See Lepley v. State,* 807 P.2d 1095, 1099 n. 1 (Alaska App.1991).

**16.** AS 22.07.020(b).