**Franklin DAYTON Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8791.**

Court of Appeals of Alaska.

Sept. 16, 2005.

---

5. 698 P.2d 1230 (Alaska App.1985).

6. *Id.* at 1232–33.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

W.H. Hawley Jr., Assistant Attorney General, Office of Special Prosecutions and Ap-

peals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

This case requires us to resolve the slight inconsistency between the *"Austin"* rule—the sentencing rule first established by this Court in *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981)—and the later legislative codification of that rule in former AS 12.55.125(k)(2).

As we explain in more detail below, we promulgated the *Austin* rule under our common-law authority to create rules to implement and supplement the then-existing statutes governing the sentencing of first felony offenders convicted of class B and class C felonies—*i.e.*, offenders who were not subject to presumptive sentencing. The purpose of the *Austin* rule was to make the sentencing of first felony offenders more consistent with the sentencing of second felony offenders (*i.e.*, offenders who *were* subject to presumptive sentencing). And the purpose of AS 12.55.125(k)(2) was to codify the *Austin* rule. But the wording of the statute differs slightly from the final version of the *Austin* rule that we announced in *Brezenoff v. State*, 658 P.2d 1359, 1362 (Alaska App.1983).

For the reasons explained here, we conclude that AS 12.55.125(k)(2) did indeed codify a slightly different sentencing rule from the one we announced in *Brezenoff*. And because any common-law rule announced by this Court must yield to a contrary provision of a statute dealing with the same issue, we conclude that AS 12.55.125(k)(2) superseded our rule.

### Underlying facts

Franklin Dayton Jr. was originally indicted for first- and second-degree sexual assault, stemming from his act of sexual penetration with a woman who was intoxicated and who had fallen asleep in his home. Dayton successfully moved to have the first-degree sexual assault charge dismissed, but the superi- or court upheld the second-degree sexual assault charge. The parties then negotiated a plea bargain.

Under the terms of this plea bargain, the State agreed to dismiss the sexual assault charge and replace it with a charge of third-degree assault (*i.e.*, not a sexual assault). The parties agreed to open sentencing on this reduced charge, and the parties further agreed that the superior court's sentencing decision could be based on the contents of the pre-sentence report and the police reports in the case, without the need for either side to produce live testimony. As Dayton's attorney told the court,

> *Defense Attorney:* And ... part of the agreement is [that] we won't contest any information in the pre-sentence report that would require that the victim be present to testify. . . . None of the core information will [be] contest[ed] from the police reports.

Following this announcement from the defense attorney, Superior Court Judge Randy M. Olsen addressed Dayton personally, asking him if he understood what he was giving up:

> *The Court:* [Y]ou're not going to have a trial, and you're not going to have witnesses come in. And Ms. Holland, [your attorney,] is very experienced, [and she] would be able to cross-examine people and make people come in and testify ... even if they didn't want to. . . . And you're giving up all of those trial rights in return for getting this resolution [of your case]. And you say you want to go straight to ... the sentencing. Is that what you want to do?
>
> *Dayton:* Yes.

However, the parties then expressed some doubt as to whether the new charge of third-degree assault was a true lesser included offense of the original sexual assault charges. They concluded that, in order to resolve any doubt, the district attorney's office should draw up an information charging Dayton with third-degree assault, and then Dayton should be asked to formally waive indictment on this charge. For this reason, another court proceeding was scheduled for the following day.

The next afternoon, Dayton waived indictment and pleaded no contest to the information charging him with third-degree assault. At that time, Dayton's attorney again affirmed that "there's not going to be any denials of the information that's ... in the police report." The defense attorney explained that there were "two different versions [of events]" presented in the reports—the victim's version, and Dayton's version. But the attorney told the court:

> *Defense Attorney:* We agree that there's no need that the complaining witness would have to testify, either in person or telephonically, even [as] to ... information [that is] disputed about the incident.

Three weeks before Dayton's sentencing, the State filed its required pre-sentencing pleading under Alaska Criminal Rule 32.1. In this pleading, the State noted that Dayton was not subject to presumptive sentencing because he was a first felony offender and because his offense, third-degree assault, was a class C felony. This meant that Dayton's sentencing was governed by former AS 12.55.125(k)(2).

AS 12.55.125(k)(2) was repealed earlier this year when the legislature revised Alaska's presumptive sentencing laws. *See* SLA 2005, ch. 2, § 32 (effective March 23, 2005). However, at the time of Dayton's offense and at the time of his sentencing, this statute declared that, in the absence of one or more of the aggravating factors defined in AS 12.55.155(c), or extraordinary circumstances as defined in AS 12.55.165, a first felony offender convicted of a class C felony could not receive

> a term of unsuspended imprisonment that exceeds the presumptive term for a second felony offender convicted of the same crime....

In Dayton's case, the relevant presumptive term was 2 years to serve.[1]

The State announced that it would rely on two aggravating factors to seek a sentence above the normal 2–year limit. These two aggravating factors were AS 12.55.155(c)(5) (that the victim was particularly vulnerable because she was incapacitated due to intoxication), and AS 12.55.155(c)(10) (that Dayton's conduct was among the most serious within the definition of the offense because he had, in fact, sexually assaulted the victim).

The State further announced that, to prove these two aggravators, it would rely on the information found on pages 2 through 5 of the pre-sentence report. These pages of the pre-sentence report contain (1) the victim's version of events, (2) the statement of a witness who reported that the victim came to her house in tears and said that Dayton had raped her, and (3) Dayton's various responses to this accusation.

The following week, Dayton's attorney filed a response to the State's pleading. This response almost derailed the plea bargain. In her response, Dayton's attorney wrote:

> Mr. Dayton disputes the state's ability to rely upon [pages] 2–5 of the presentence report[,] as Mr. Dayton is lodging objections to the presentence report.... Mr. Dayton will re-enter [a] testimonial denial of the [State's] claim that [his] sexual encounter with [the victim] was nonconsensual. The state is therefore not entitled to rely on hearsay statements such as [are] found in the presentence report to meet its burden of proof regarding [the proposed] aggravating factors. [*See*] *Ashenfelter v. State*, 988 P.2d 120 (Alaska App.1999).

That is, the defense attorney declared that Dayton was going to offer a testimonial denial of the information contained in the presentence report—thus requiring the State to either call the victim to the stand or give up its attempt to prove the aggravators.[2]

Understandably, the State responded by reminding Judge Olsen of the defense attorney's previous statements in open court on this subject. As we have already described,

---

**1.** See former AS 12.55.125(e)(1) (before the 2005 amendment).

**2.** *See Evans v. State,* 23 P.3d 650, 652 (Alaska App.2001); *Hamilton v. State,* 771 P.2d 1358, 1362–63 (Alaska App.1989) (a sentencing judge can rely on out-of-court statements described in the pre-sentence report for proof of the matters asserted unless the defendant offers a testimonial denial of those statements and submits to cross-examination, in which case the State must support its assertions with live testimony).

the defense attorney had declared (on two different occasions) that, as part of the plea bargain, Dayton "[would not] contest any information in the pre-sentence report that would require that the victim be present to testify", and that "there [would be] no need [for] the complaining witness ... to testify, either in person or telephonically, even [as] to ... information [that is] disputed about the incident".

At the ensuing court hearing, Dayton's attorney told Judge Olsen that she had interpreted the plea agreement to mean that Dayton would refrain from entering a testimonial denial, and would not require the State to call the victim to the stand, *so long as the superior court refrained from making any findings about the facts of the offense:*

> *Defense Attorney:* [W]hat the defense thought the plea agreement meant was that [the parties] would not ask ... the court [to] make a determination about a particular version [of the events] being proved.... And if you listen to the actual [recording] of the change-of-plea hearing, ... I was saying [that] so long as the pre-sentence report would include both [the victim's and the defendant's] versions, we don't see any reason to have a testimonial denial....

> [W]hen we said "no testimonial denials", we meant that we weren't denying that that's what [the victim] reported, that that's how she remembered the incident happening, and that [we] would not ... [be] asking [to have] her version completely stricken from the report. [But I never agreed] that [the State] could rely on the pre-sentence report as evidence [to prove aggravating factors].

The defense attorney's attempted explanation of her actions did not convince the prosecutor. The prosecutor told Judge Olsen: " 'No testimonial denials' means exactly that: ... no testimonial denials of any disputed facts. That is what is in the agreement, and that is what is placed on the record." The prosecutor stated that if Dayton and his attorney held some different view of this matter, then there was no meeting of the minds: Dayton should file a motion to withdraw his

plea, and the State would reinstate the pre-existing charges.

Judge Olsen agreed with the prosecutor that, under Alaska case law, the term "testimonial denial" refers to an objection to the sentencing court's reliance on the matters asserted in a witness's out-of-court statement, not an objection to the fact that the witness made the statement. Judge Olsen further ruled that, in the absence of a testimonial denial from Dayton, the State would be entitled to rely on the contents of the pre-sentence report to prove the two proposed aggravating factors—that is, to prove that Dayton had sexually assaulted the victim, and to prove that the victim's intoxication made her particularly vulnerable. Thus, Judge Olsen declared, the choice facing Dayton was to proceed with the sentencing under those rules, or to withdraw his plea. Judge Olsen gave the parties one week to discuss this matter.

When the parties returned to court the following week, the prosecutor told Judge Olsen that the parties had agreed that the pre-sentence report would incorporate both the victim's version of events and the defendant's version of events. Further, the parties had agreed that

> *Prosecutor:* ... both sides would respectively argue whatever findings the court [sh]ould make with respect to aggravators or mitigators, and what weight to give [those aggravators and mitigators], based upon [the] information that is [contained] in the pre-sentence report [and] in the police report that the court would have to review. And there would be no need to have testimony from [the victim], [or] to put [in] any additional testimony ..., and there would be no other further objections.

> ...

> *The Court:* Okay. Ms. Holland?

> *Defense Attorney:* Right, that covers it.... I had some objections just to the format of the pre-sentence report and other things, but nothing as to the substance, the information in it. So that does cover [it].

Two days later, the parties returned to court for Dayton's sentencing. The prosecu-

tor and the defense attorney argued their differing interpretations of the information contained in the pre-sentence report. The defense attorney acknowledged that the State's position on the two aggravating factors was perhaps consistent with the victim's description of events. However, the defense attorney argued that it was impossible to conclude, from the conflicting versions of events contained in the pre-sentence report, that the truth of the victim's account was established by clear and convincing evidence.

(At the time of Dayton's sentencing, the standard of proof for aggravating and mitigating factors was "clear and convincing evidence". *See* former AS 12.55.155(f) (2004).)

At the conclusion of these arguments, Judge Olsen stated that he "[had] no doubt that Mr. Dayton engaged in sexual penetration with [the] victim while she was incapacitated." The judge explained that his conclusion was based on several factors:

> *The Court:* One [factor] is [Dayton's] varied stories about what happened. [My conclusion is] also based upon his victim's reaction after [becoming] conscious of the assault.... [She ran out of the house] and [ran] to friends, and [was] very emotionally upset. And all of that just validates [my conclusion that] there was no consent.... There wasn't any dating relationship [between these two people]. There wasn't any signal of [a sexual] come-on.... What happened was just a horrible crime to an incapacitated woman.
>
> ...
>
> I really am convinced that the aggravators have been established by clear and convincing evidence....

Judge Olsen then sentenced Dayton to 4 years' imprisonment with 2 years suspended (*i.e.*, 2 years to serve).

*Dayton's claim under Blakely v. Washington, and how resolution of this Blakely claim hinges on the meaning of AS 12.55.125(k)(2)*

In *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court held that the Sixth Amendment to the United States Constitution guarantees criminal defendants a right of jury trial on all factual issues that are necessary to establish a sentencing judge's authority to impose the type of sentence that the defendant received. Thus, when a sentencing judge has no authority to exceed a specified sentencing ceiling unless particular aggravating factors are proved, the defendant has a right to demand a jury trial on those aggravating factors (with the exception of prior criminal convictions). *Blakely*, 542 U.S. at 302–303, 124 S.Ct. at 2537–38. If the defendant is denied this right, then the sentencing judge can not exceed the prescribed statutory ceiling. *Id.*, 124 S.Ct. at 2538.

Dayton's case presents an issue concerning the relationship between the right to jury trial recognized in *Blakely* and the sentencing of first felony offenders under former AS 12.55.125(k)(2). Part of the answer is found in our recent decision in *State v. Gibbs*, where we held that *Blakely* does not affect sentencing under AS 12.55.125(k)(2) if the defendant received less time to serve than the presumptive term specified for second felony offenders convicted of the same crime. 105 P.3d 145, 146 (Alaska App.2005).

In *Gibbs*, we expressly rejected the argument that the *Blakely* right to jury trial was triggered whenever the defendant's *total* sentence (that is, the defendant's time to serve plus suspended time) exceeded the presumptive term for second felony offenders. *Id.*, 105 P.3d at 147–48. We noted that, in 2001, in *Cook v. State*,[3] we squarely held that AS 12.55.125(k)(2) only limits a sentencing judge's authority to impose time to serve; the statute does not limit the judge's authority to impose additional suspended time, so long as the "time to serve" limitation is honored. *Gibbs*, 105 P.3d at 148.

But *Gibbs* does not wholly resolve Dayton's case, because Dayton's case raises a question concerning the proper interpretation of the "time to serve" limitation codified in AS 12.55.125(k)(2).

Although AS 12.55.125(k)(2) was intended to codify the *Austin* rule, we have previously recognized that there is a slight discrepancy

**3.** 36 P.3d 710, 730 (Alaska App.2001).

between the wording of this statute and the final form of the *Austin* rule that this Court announced in *Brezenoff v. State,* 658 P.2d 1359 (Alaska App.1983).

As explained in *Brezenoff,* the *Austin* rule requires proof of aggravating factors if a defendant's time to serve *equals* the presumptive term for a second felony offender and, in addition, the defendant receives suspended jail time:

> Where the total sentence received by a first offender exceeds the presumptive sentence for a second offender but the period of actual imprisonment is substantially less, ... the total sentence meets the *Austin* requirement of a substantially more favorable sentence for the first offender. ... Where, however, the actual period of imprisonment equals or exceeds the presumptive term for a second offender, we will require aggravating factors or extraordinary circumstances to justify additional [jail] time[,] even if it is suspended.

*Brezenoff,* 658 P.2d at 1362 (citations omitted).

Thus, when Dayton's attorney discussed the range of permissible sentences with Judge Olsen, she told the judge that, unless the State proved aggravating factors, the "time to serve" component of Dayton's sentence had to be at least one day less than the 2–year presumptive term prescribed for second felony offenders.

But AS 12.55.125(k)(2) is worded differently from the rule stated in *Brezenoff.* Under the statute, aggravating factors are needed only if the defendant's time to serve "*exceeds* the presumptive term for a second felony offender convicted of the same crime". (Emphasis added)

Thus, "the *Austin* rule calls for a first offender to receive an unsuspended term of imprisonment *more favorable* than the presumptive term for second felony offenders, while the statute calls for a first felony offender to receive an unsuspended term *no*

*greater* than the presumptive term for second felony offenders".[4]

In *Pitka v. State,* 19 P.3d 604 (Alaska App.2001), the State expressly argued that AS 12.55.125(k)(2) had superseded the *Austin* rule on this point. We found it unnecessary to decide this issue because, in *Pitka,* the State proved an aggravating factor. *Id.,* 19 P.3d at 608.

But now, Dayton's sentence of 4 years with 2 years suspended again squarely raises this issue, and our resolution of this point is crucial to our consideration of Dayton's *Blakely* claim. We therefore must decide whether the legislature, by enacting AS 12.55.125(k)(2), changed the rule governing the time-to-serve component of a first felony offender's sentence—whether, in the absence of aggravating factors, a first felony offender's time to serve must be more favorable than the presumptive term for a second felony offender (the *Austin/Brezenoff* formulation) or, instead, it must not exceed that presumptive term (the statutory formulation).

*By enacting AS 12.55.125(k)(2), the legislature superseded the Austin/Brezenoff rule*

As we acknowledged in *Gibbs,* the *Austin* rule is an example of our exercise of the common-law authority to declare the law in the absence of contrary legislation.[5]

(Regarding this common-law authority, see our supreme court's decision in *Evans ex rel. Kutch v. State,* 56 P.3d 1046 (Alaska 2002), affirming that, "in the absence of a statute directing a contrary rule, courts [are] empowered to interpret the common law ... unless and until the Alaska legislature acts to modify [that law]."[6] *See also Edwards v. State,* 34 P.3d 962, 968 (Alaska App.2001): "[When] statutory [analysis] does not yield an answer to our inquiry, we must employ our common-law power to declare the law in the absence of a statutory directive....")

As our supreme court has observed, "a statute may form the basis for a common law

---

**4.** *Beasley v. State,* 56 P.3d 1082, 1087 (Alaska App.2002) (Mannheimer, J., concurring) (emphasis in the original).

**5.** *Gibbs,* 105 P.3d at 148.

**6.** *Evans,* 56 P.3d at 1056 n. 60, quoting *Bauman v. Day,* 892 P.2d 817, 828 (Alaska 1995), and *Surina v. Buckalew,* 629 P.2d 969, 973 (Alaska 1981).

rule which applies beyond the prescribed scope of the statute."[7] This is the rationale of the *Austin/Brezenoff* rule.

Under the version of presumptive sentencing enacted in 1980, in prosecutions for class B and class C felonies, the presumptive sentencing statutes only governed the sentencing of second and third felony offenders; the legislature did not expressly restrict the sentencing of first felony offenders. As we explained in *Cook v. State*, the purpose of our decision in *Austin* (and our subsequent decisions interpreting *Austin* ) was to implement the legislature's policy of reasonable sentence uniformity in the sentencing of those first felony offenders.[8] The fundamental policy behind the *Austin* rule was "protecting first offenders against harsher treatment than similarly situated second offenders".[9] In other words, all other things being equal, a first felony offender should receive a more favorable sentence than a second felony offender.

 But "[w]hen the courts exercise their common-law authority, the guiding principle is that they should not exercise this authority in disregard of existing constitutional and statutory provisions."[10] This means that when a court adopts a common-law rule and then the legislature enacts a statute to govern the same matter, the statute controls.[11]

We therefore conclude that AS 12.55.125(k)(2) supersedes the *Austin/Brezenoff* rule.

Anticipating our conclusion, Dayton suggests that we should interpret the statute to mean the same thing as the *Austin/Brezenoff* rule. That is, even though AS 12.55.125(k)(2) says that aggravating factors are needed only if a defendant's time to serve "exceeds" the presumptive term for a second felony

offender convicted of the same crime, Dayton asks us to interpret this statute as if it said "equals or exceeds".

But the issue here is not what we would like the statute to say, or what we think it ought to say. Rather, the question is what the legislature intended.[12] Other than arguing that this Court's formulation of the rule is better, Dayton offers nothing from the legislative history of AS 12.55.125(k)(2) to support his suggestion that the legislature misspoke when it said "exceeds", and that the legislature really meant to say "equals or exceeds".

We note that the legislature used a similar formulation when it amended AS 12.55.120(a) and (d) in 1995, limiting the right of sentence appeal to those felony offenders who receive a composite sentence "exceeding two years of unsuspended incarceration", and to those misdemeanor offenders who receive a composite sentence "exceeding 120 days".[13]

We further note that the legislature might reasonably have concluded that AS 12.55.125(k)(2) would present fewer administrative problems for the Department of Corrections if the statute said "exceeds" rather than "equals or exceeds"—so that sentencing judges would not impose sentences of "1 year and 11 months" or even "1 year and 364 days" to stay within the statutory limit.

 It is true that Alaska does not adhere to the "plain meaning" rule of statutory construction.[14] Nevertheless, the wording of AS 12.55.125(k)(2) is clear—and this means that Dayton must present a very convincing argument before we declare that the statute should be interpreted at variance with that wording.[15] Dayton has failed to meet this burden.

---

**7.** *John v. Baker*, 982 P.2d 738, 793–94 (Alaska 1999), quoting *Hanebuth v. Bell Helicopter International*, 694 P.2d 143, 146 (Alaska 1984).

**8.** *Cook*, 36 P.3d at 730.

**9.** *Espinoza v. State*, 901 P.2d 450, 453 (Alaska App.1995). *Accord, Andrew v. State*, 835 P.2d 1251, 1253 (Alaska App.1992).

**10.** *Hosier v. State*, 957 P.2d 1360, 1364–65 (Alaska App.1998).

**11.** *Dandova v. State*, 72 P.3d 325, 333 (Alaska App.2003).

**12.** *See Brant v. State*, 992 P.2d 590, 592–93 (Alaska App.1999) (Mannheimer, J., concurring).

**13.** *See* 1995 SLA, ch. 79, §§ 7–8.

**14.** *Eppenger v. State*, 966 P.2d 995, 996 (Alaska App.1998).

**15.** *See, e.g., Eppenger v. State*, 966 P.2d at 996; *Tallent v. State*, 951 P.2d 857, 860 (Alaska App. 1997).

Accordingly, we declare that AS 12.55.125(k)(2) means what it says: when a judge is sentencing a first felony offender for a class B or a class C felony, the defendant's time to serve (*i.e.,* the unsuspended portion of the defendant's term of imprisonment) can equal, but can not exceed, the presumptive term that would apply to a second felony offender convicted of the same crime.

*Dayton's argument that AS 12.55.125(k)(2) was unconstitutional if interpreted in this way*

█ Dayton argues that if AS 12.55.125(k)(2) is interpreted as we have just interpreted it, then the statute was unconstitutional.

Dayton notes that, under the pre–2005 presumptive sentencing statutes, a judge could not sentence a second felony offender to more than the applicable presumptive term—even if the additional jail time was suspended—unless aggravating factors were proved.[16] Dayton contends that, all other things being equal, it is "anomalous" for AS 12.55.125(k)(2) to authorize a judge to sentence a first felony offender to the same amount of unsuspended jail time that a similarly situated second felony offender could receive, plus additional suspended jail time (something that the judge could not do when sentencing the similarly situated second felony offender). Dayton asserts that this distinction is so unfair and so unreasonable that it deprives first felony offenders of due process of law.

But this purported unfairness has been a fixture of Alaska law since 1982, when this Court decided *Tazruk v. State*, 655 P.2d 788 (Alaska App.1982).

The defendant in *Tazruk* was a first felony offender convicted of a class B felony. He received a sentence of 8 years' imprisonment with 5 years suspended (*i.e.,* 3 years to serve). On appeal, Tazruk invoked the *Austin* rule that, in a non-aggravated case, a first felony offender should receive a more favorable sentence than the presumptive term that would apply to a second felony offender.

In Tazruk's case, that applicable presumptive term was 4 years. Tazruk therefore argued that his 8–year sentence was illegal under *Austin.*[17]

We affirmed Tazruk's sentence because we rejected his proposed interpretation of the *Austin* rule:

We conclude that a sentence of eight years with five suspended is not greater than the presumptive sentence of four years for purposes of applying the *Austin* rule. When we evaluate a sentence[,] we consider the whole sentence including suspended time. However, in evaluating whether a sentence is in excess of the presumptive sentence which a second felony offender would receive, our primary focus should be on [the unsuspended] portion of the sentence. . . . By that standard, the three years of imprisonment to which Tazruk is sentenced is less than the four years which a second felony offender would receive. In the event that the suspended portion of Tazruk's sentence is later imposed, he would be entitled to bring a sentence appeal at that time. [But we] conclude that Tazruk's sentence does not violate the *Austin* rule.

*Tazruk,* 655 P.2d at 789.

To a large extent, Dayton's current argument concerning the purported unfairness of AS 12.55.125(k)(2) is a reprise of the attack on *Tazruk* that was presented to us in *Cook v. State,* 36 P.3d 710 (Alaska App.2001). We rejected that argument in *Cook,*[18] and we do so again here. Even under the *Austin* rule, suspended jail time was not the equivalent of unsuspended jail time. As our decision in *Tazruk* illustrates, the *Austin* rule allowed a judge to sentence a first felony offender to a term of imprisonment that, in total, exceeded the presumptive term for a second felony offender, so long as the unsuspended portion of the sentence was less than the applicable presumptive term.

It is true that, in non-aggravated cases, the *Austin* rule (as interpreted in *Tazruk* and in *Brezenoff*) allowed a sentencing judge to

---

**16.** *See Haag v. State,* 117 P.3d 775, 783 (Alaska App.2005).

**17.** *Tazruk,* 655 P.2d at 789.

**18.** *Cook,* 36 P.3d at 730.

give a first felony offender almost the same amount of time to serve as a second felony offender, and then add suspended jail time. But as we noted in *Tazruk*, if the defendant's probation was later revoked and the previously suspended jail time was imposed, the defendant would again be able to appeal the sentence—and, in such circumstances, if the defendant's new total of unsuspended incarceration exceeded the applicable presumptive term, the sentence would have to be supported by aggravating factors or extraordinary circumstances.[19]

Moreover, as the State points out, a first felony offender's sentence of imprisonment was a non-presumptive sentence of imprisonment. That is, even though a first felony offender convicted of a class B or class C felony might receive unsuspended jail time equal to (or almost equal to) the presumptive term for a second felony offender, the first felony offender would be eligible for discretionary parole after serving one-fourth of the sentence, while a second felony offender would be ineligible for discretionary parole.[20]

For these reasons, we re-affirm the interpretation of the *Austin* rule that we announced twenty years ago in *Tazruk*, and that we recently upheld in *Cook:* the *Austin* rule focused on a defendant's unsuspended term of imprisonment, not on additional jail time that might be suspended.

As we explained above, the *Austin* rule called for an unsuspended term of imprisonment that was more favorable than the applicable presumptive term for second felony offenders. But as Dayton's attorney told Judge Olsen during a discussion of sentencing matters, even in the absence of aggravating factors, the *Austin* rule would have authorized Judge Olsen to sentence Dayton to an unsuspended term of 2 years minus 1 day. That is, AS 12.55.125(k)(2) increased the au-

thorized amount of unsuspended incarceration by a single day; it allowed Judge Olsen to impose an unsuspended term of 2 years.

Thus, if AS 12.55.125(k)(2) is so unfair as to violate the guarantee of due process of law, that unfairness must lie in this one additional day of unsuspended jail time.

Dayton argues that this single day is indeed constitutionally significant—because, by superseding the *Austin* rule, AS 12.55.125(k)(2) allowed a sentencing judge to give a first felony offender an unsuspended term of imprisonment that was not just close to, but rather equal to, the presumptive term for a second felony offender, *plus* an additional amount of suspended jail time. Dayton argues that this was fundamentally unfair because a judge could not give the same sentence to a second felony offender (the presumptive term to serve, plus additional suspended jail time) unless one or more aggravating factors were proved.

According to Dayton, this extra day is the straw that broke the statute's back. No longer could the State argue that, notwithstanding the additional jail time, a first offender's time to serve was minimally less than the applicable presumptive term for second felony offenders. Rather, in cases where no aggravating factors were proved, AS 12.55.125(k)(2) allowed sentencing judges to give first felony offenders a more severe sentence than similarly situated second felony offenders—*i.e.*, exactly the same amount of time to serve, plus additional suspended time—without any apparent justification for this difference in treatment.

But as we pointed out earlier, the sentence of imprisonment that a first felony offender received under AS 12.55.125(k)(2) was not the same as the sentence of imprisonment that a second felony offender received under

---

**19.** *Tazruk*, 655 P.2d at 789. *See also Chrisman v. State*, 789 P.2d 370, 371 (Alaska App.1990).

**20.** *See* former AS 12.55.025(g)(3) (pre–2005) (presumptive terms of imprisonment could not be reduced); AS 33.16.090(b) (pre–2005) (prisoners who received a presumptive term were not eligible for discretionary parole during that presumptive term, although they could apply for parole after serving a portion of any extra years of imprisonment that were added to the pre-

sumptive term because of aggravating factors); and AS 33.16.100(c) (pre–2005) (prisoners serving a non-presumptive term for a class B or class C felony were eligible for discretionary parole after serving one-fourth of their sentence).

*See also* 22 AAC 20.040(4) and 20.035(4) (restating the rule that prisoners serving a non-presumptive term for a class B or class C felony are eligible for discretionary parole after serving one-fourth of their sentence).

the applicable presumptive sentencing statutes (former AS 12.55.125(d) or (e), depending on whether the offense was a class B or class C felony). First felony offenders received a non-presumptive term; they were eligible for discretionary parole after serving one-fourth of their sentence. Second felony offenders received a presumptive term; they were not eligible for discretionary parole.

Thus, even though a first felony offender convicted of a class B or class C felony might receive the same amount of time to serve as a similarly situated second felony offender, the first felony offender's sentence was in fact less severe. For this reason, we conclude that AS 12.55.125(k)(2) did not violate the due process rights of first felony offenders.

### Our conclusion with respect to AS 12.55.125(k)(2) and Dayton's Blakely claim

As we have explained here, AS 12.55.125(k)(2) superseded the common-law sentencing rule announced in *Austin, Tazruk,* and *Brezenoff.* Moreover, we have rejected Dayton's constitutional challenge to this statute. This means that, even without proof of any aggravating factors, Judge Olsen was authorized to impose the sentence that Dayton received in this case: 4 years' imprisonment with 2 years suspended.

Dayton's *Blakely* argument is therefore moot.

### Issues that may potentially arise in future proceedings in Dayton's case

Even though Dayton's sentence is lawful under AS 12.55.125(k)(2), the fact that he received a term of suspended imprisonment means that, potentially, *Blakely* issues will arise in his case in the future—that is, if Dayton violates his probation and the superior court decides to revoke some or all of the suspended imprisonment.

We need not decide now whether, or how, *Blakely* would apply to those potential probation revocation proceedings. We do, however, wish to address two related matters.

As explained above, Dayton's sentencing judge, Judge Olsen, found that the State had proved two aggravating factors by clear and convincing evidence. Dayton argues that,

under *Blakely,* he was entitled to have a jury decide whether the State had proved these aggravating factors, and he was also entitled to demand that the aggravating factors be proved beyond a reasonable doubt.

This is a correct reading of *Blakely.* However, Dayton's conviction stems from a plea bargain in which he expressly agreed that the aggravators would be litigated in this manner. It could be argued that Dayton must renounce his plea bargain if, in the future, he wishes to raise a *Blakely* attack on the aggravators and on any enhanced sentence imposed for violation of probation. We express no opinion on this issue at this time.

■ Dayton also argues that, aside from any *Blakely* issue, it was improper as a matter of law for Judge Olsen to find the two aggravating factors based solely on the content of the pre-sentence report and the police reports. Dayton points out that the pre-sentence report contains at least two different versions of events, and he argues that certain portions of the pre-sentence report cast doubt on the veracity of the victim's account. Dayton contends that, under these circumstances, the law should prohibit a sentencing judge from finding any disputed aggravator to be proved unless the State presents live testimony to support the aggravator.

This argument is a repudiation of the position that this same attorney expressly endorsed in the superior court. As we explained above, Dayton's plea agreement with the State almost unraveled when Dayton's attorney insisted that the State was obliged to present live testimony from the victim, and could not rely solely on the pre-sentence report, if the State wished to prove aggravating factors at Dayton's sentencing. The plea bargain went forward again only after Dayton's attorney expressly agreed (in open court) that Judge Olsen could decide the disputed aggravating factors based on the content of the pre-sentence report and the police reports, without requiring live testimony from the victim (or anyone else).

Dayton's point was not preserved in the superior court, and any error was invited.

Because of this, Dayton is estopped from pursuing this claim.

*Dayton's challenges to three of his conditions of probation*

■ One of Dayton's conditions of probation, General Condition No. 11, requires him to "[a]bide by any special instructions given [to him] by . . . probation officers". Dayton argues that this condition of probation constitutes an improper delegation of authority to the Department of Corrections because, theoretically, a probation officer's instruction might violate Dayton's constitutional rights, or because the instruction might place such a substantial burden on Dayton as to amount to a new condition of probation, outside the ones imposed by the sentencing court.

Dayton contends that we should amend the condition of probation so that it reads: "abide by any special instructions given by . . . probation officers . . . that are necessary to the implementation of the conditions of probation established by the court, that are not inconsistent with any other condition of probation, that are consistent with the purpose[s] of probation, and that do not violate any statutory or constitutional right of the probationer."

But, with the *caveat* that a probation officer's instruction need be "necessary" only in the broader sense of that word (*i.e.*, appropriate and well adapted to fulfilling the objectives of probation),[21] the limitations that Dayton proposes are already implicitly present. Dayton has the right to seek court review of any special instruction from a probation officer that he believes abridges his rights or exceeds the authority of the Department of Corrections. His objection to this condition of probation is therefore moot.

■ Another of Dayton's conditions of probation, Special Condition No. 6, requires him to "[i]nform [his] probation officer of any medications being taken and [to] provide proof of valid prescriptions for [these medications]." Dayton argues that the record contains no evidence that he abuses prescription drugs. Moreover, Dayton argues that

this condition of probation is worded so broadly that it requires him to inform his probation officer every time he takes aspirin or any other non-prescription medication.

Based on the fact that Judge Olsen required Dayton to "provide proof of valid prescriptions" for the medications he was taking, it appears to us that Judge Olsen did not intend to require Dayton to report non-prescription medications. Rather, the judge intended to impose a narrower reporting requirement, confined to prescription medications.

The question, then, is whether the record supports Judge Olsen's decision to require Dayton to report his use of any prescription medication. When Judge Olsen imposed this requirement, he told Dayton that it was "just to help [the probation officers] keep track of [your progress]; the probation officers are responsible for your continued progress, and . . . any substance abuse, they should have access to that."

But a person's use of prescription medications does not typically indicate substance abuse. We agree with Dayton that, in the absence of any reason to believe that he had abused or might abuse prescription drugs, there was an insufficient basis for this condition of his probation.

■ Finally, Dayton challenges Special Condition No. 9, which requires him to submit to warrantless searches "for prohibited weapons and alcohol". Dayton concedes that the record establishes his problem with alcohol, but he contests the portion of this condition that subjects him to searches for "prohibited weapons". He claims that Judge Olsen erred in authorizing this type of search because Dayton's underlying offense involved no weapon.

In *Sprague v. State,* 590 P.2d 410 (Alaska 1979), the Alaska Supreme Court invalidated a similar condition of probation that required the defendant to submit to warrantless searches for drugs. The defendant in *Sprague* was being sentenced for burglary; he had not been accused of any drug of-

---

**21.** See the definition of the phrase "necessary and proper" contained in *Black's Law Dictionary* (7th ed.1999), p. 1052.

fenses, nor had the State shown that he was addicted to drugs or that his involvement in the burglary was precipitated by a need for money to purchase illegal drugs.[22] Rather, the sentencing judge imposed this condition "to forestall Sprague's future involvement with the kind of individuals who would be likely to burglarize other people's homes."[23] The supreme court concluded that, given "so weak a connection between the crime committed and the [challenged] condition of probation", Sprague could not be subjected to warrantless searches for drugs as a condition of his probation:

> If we were to uphold the probation condition in this case, in effect, we would be opening up virtually all classes of offenders to warrantless searches on less than probable cause.

*Sprague,* 590 P.2d at 418.

Dayton's case is similar. The record contains no indication that Dayton has ever used or possessed weapons in violation of the law, or that he has used or carried weapons during the commission of a crime. It is true that, because Dayton is now a convicted felon, Alaska law bars him from possessing any concealable firearm, and federal law forbids him from possessing any firearm at all. But the question is whether Dayton's person, residence, and vehicles should be subjected to warrantless searches for weapons on less than probable cause. The record contains no justification for this condition of probation.

*Conclusion*

Under former AS 12.55.125(k)(2), Judge Olsen was authorized to sentence Dayton to 4 years' imprisonment with 2 years suspended even in the absence of any aggravating factors. Dayton's *Blakely* attack on the sentencing procedures in his case is therefore moot. Accordingly, we AFFIRM Dayton's sentence of 4 years with 2 years suspended.

With regard to the three challenged conditions of Dayton's probation, we AFFIRM General Condition 11, but we VACATE Special Condition 6 and the "weapons" clause of Special Condition 9.

---

**22.** *Sprague,* 590 P.2d at 417–18.

**23.** *Id.* at 418.