Johnny James EDWARDS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7728.

Court of Appeals of Alaska.

Nov. 9, 2001.

---

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Scott L. Mattern, Assistant District Attorney, Harry L. Davis, District Attorney, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

As one of his conditions of probation, Johnny James Edwards was ordered "[n]ot to live with any females under 16 years of age or with women who have females under 16 years of age living with them". The superior court revoked Edwards's probation after finding that Edwards "[spent] a substantial part of [one] night" at the home of his ex-wife, where the couple's 8–year–old daughter was also living. The court then imposed 6 months of Edwards's previously suspended sentence.

In addition, the court amended Edwards's conditions of probation by adding a more stringent restriction on his contact with minors. Under the new condition, Edwards is ordered "not [to] be in the physical presence ... of any person under the age of 16 without the presence of a supervisor approved by [his] probation officer in advance of the contact".

We conclude that the superior court should not have revoked Edwards's probation. The court's finding of fact (that Edwards spent a substantial portion of one night at his ex-wife's home) does not support the court's legal conclusion (that Edwards "lived" with an underage female or a woman residing with an underage female).

However, we conclude that the evidence presented at the hearing justified the superior court's decision to amend Edwards's conditions of probation to impose greater restrictions on his contact with underage females.

### Underlying proceedings

Edwards was originally prosecuted for sexual abuse of a minor after he had sexual relations with his 13 year old stepdaughter and got her pregnant. In 1993, Edwards pleaded guilty to first-degree sexual abuse of a minor and was sentenced to 9 years in prison (with another 3 years suspended).

This appeal involves a separate but related case. During Edwards's prosecution for sexual abuse of a minor, he failed to attend his omnibus hearing. Based on this conduct, Edwards was separately charged with, and convicted of, felony failure to appear.[1] For this crime, Edwards received a consecutive term of 2 years' imprisonment with 1 year suspended. As a condition of Edwards's probation in this failure to appear case, Edwards was ordered "[n]ot to live with any females under 16 years of age or with women who have females under 16 years of age living with them".

In January 1999, Edwards was released on parole under conditions set by the Parole Board. Under AS 33.20.040(c), he commenced his probation at the same time. Edwards's conditions of parole were stricter than the conditions of probation set by the superior court. As explained above, the superior court ordered Edwards not to "live" with female children under the age of 16. The Parole Board, on the other hand, ordered Edwards not to have any unsupervised contact with children under the age of 18.

Within a month of Edwards's release, his probation/parole officer discovered that Edwards was spending a great deal of time with his ex-wife, Evelyn Stearns, and their children—a 14–year–old boy and an 8 year old girl. In fact, the probation officer received a report that Edwards was residing with his ex-wife and the children at an address on Lucas Street in Wasilla.

When the probation officer asked Edwards about this, he told the officer that he really was residing at a Knik–Goose Bay Road address, approximately 14 miles outside Wasilla, but that he had been spending a lot of time at his ex-wife's house because his ex-wife was his only means of transportation. The officer subsequently learned that this explanation was false: according to the officer, "several [of Edwards's] family members within the Wasilla/Palmer area ... called ... and said that they would have been more than willing to give him transportation."

On February 22, 1999, Edwards's probation officer received an anonymous report that Edwards was spending the night with the children while his ex-wife was at work. (Ms. Stearns's work shift ran from 11:00 p.m. to 7:00 a.m.) The probation officer asked for assistance in investigating this report, so Wasilla Police Officer Jean Pierre Achee and social worker Heidi Shumate went to check on the situation.

Achee and Shumate arrived at the Stearns residence at 7:21 a.m. Edwards was there, but Ms. Stearns was not. Edwards refused to let Achee and Shumate into the house, explaining that he did not feel he could give permission because it was not his house. However, he did state that his children were not in the house—that their mother had already taken them to school. While Edwards spoke with the officer and the social worker, he kept the door blocked with his body, and he kept peering nervously over his shoulder, back into the house.

Later, the probation officer questioned Edwards about this encounter. Edwards assured the probation officer that he had spent the night at his Knik–Goose Bay residence and that he had not had unsupervised contact with his children. Edwards told the officer that Stearns had left work early and had driven out to Knik–Goose Bay to pick up

1. AS 12.30.060(1).

Edwards. According to Edwards, Stearns brought him back to her Wasilla residence, but within a short time Stearns left again to take the children to school. In other words, Edwards denied spending the night at his ex-wife's house, and he denied ever being alone with his children.

The probation officer pointed out that Edwards's explanation did not seem to add up. The police officer had arrived at the Stearns residence a little after 7 o'clock in the morning. According to Edwards, Stearns had already left to take the children to school—but the children's school did not begin until 9 o'clock. Edwards then elaborated on his story: he told the probation officer that Stearns had needed the extra time to fill up her car with gas and to shop at the grocery store.

Shumate and Achee conducted a follow-up interview with Edwards's 8–year–old daughter. She told them that Edwards had been alone with her on several occasions, both at night and during the day. She described playing "dress up" with Edwards; during this play, Edwards would help her with her clothes.

Shumate and Achee also interviewed Edwards's 14–year–old son. The boy admitted that Edwards had been there alone with him and his sister on the morning of February 22nd. The boy said that his parents had told him to keep quiet about this, because Edwards could go back to jail if someone found out.

In addition, Shumate checked with Evelyn Stearns's employer to see if she really had left work early on February 22nd, as Edwards had claimed. The employer said that Stearns had not left early.

Moreover, Stearns worked in Peters Creek, which is approximately a 20– to 30–minute drive from Wasilla in the winter. If Edwards's story was true, Stearns would have had to drive out to the house on Knik–Goose Bay Road (where Edwards purportedly was staying) before she returned to her own residence. The trip from the Knik–Goose Bay residence to Stearns's residence in Wasilla was, itself, a 35– to 40–minute drive. Thus, even if Stearns had left work a few minutes early, it would have been impossible for her to drive out to the Knik–Goose Bay house, pick Edwards up, then drive the 14 miles back to Wasilla, pick up the children, and leave before 7:21 a.m. (when Achee and Shumate arrived).

Shumate also interviewed Edwards's ex-wife about the events of February 22nd. Stearns gave various contradictory accounts of her whereabouts, Edwards's whereabouts, and how he came to be staying alone at her house that morning.

In sum: viewing this evidence in the light most favorable to the State, it appeared that Edwards had been alone with his children at his ex-wife's house on the morning of February 22nd, while his ex-wife was at work.

Edwards took the stand at the hearing and gave an exculpatory account of events. Edwards explained that he and his ex-wife had planned to spend the day together with the children because both of the children had medical appointments. In particular, the 14–year–old boy was facing surgery, and Edwards wanted to meet the surgeon, whose office was in Anchorage.

To accomplish this, Edwards said, his landlord at the Knik Goose Bay residence was going to drive him to a gas station near his ex-wife's house in Wasilla. Stearns, for her part, would leave work early and pick up Edwards at the filling station. Stearns would then bring Edwards to her house, where she would pick up the children, and all four of them would drive to the medical appointments.

But Edwards's landlord either did not know or else forgot his role in this plan—for when Edwards walked over to the landlord's house, the landlord was still not awake. According to Edwards, even though time was of the essence, he decided not to knock on the landlord's door; instead, Edwards stood outside in the cold and waited. While he was waiting, another acquaintance passed by in a truck and offered Edwards a lift into Wasilla. Edwards accepted the offer, and he arrived at the gas station at approximately 7:30.

Edwards thought that he had missed the rendezvous with his ex-wife, so he walked the three-quarters of a mile to her house. When he arrived, the lights were on, but no one was home. Thinking to himself that Stearns had already left to take the children to

school—a thought totally at odds with Edwards's purported explanation for being there in the first place—Edwards let himself into the house and started to draw a bath. At that point, Edwards heard a loud pounding on the door: it was the police officer and the social worker.

(Edwards's timing of events does not comport with the testimony of the officer and the social worker, who said they encountered Edwards at his ex-wife's residence at 7:21 a.m.—ten minutes before Edwards said he was dropped off at the gas station.)

Edwards agreed that he told the officer and the social worker that the children were not there—that his ex-wife had already taken them to school. After the officer and the social worker left, Stearns arrived in her car. At about the same time, Edwards heard his children making a "loud commotion" in front of the house. Edwards assumed that his wife had forgotten about their plans for the day and had taken the children to school, only to remember later about the medical appointments. When Edwards chided Stearns for this, she replied that the children had not been with her. Instead, Edwards discovered, his son and daughter had been next door, feeding a neighbor's dogs and watching cartoons.

When the prosecutor asked Edwards to explain why his children had said that he had been alone with them that morning, Edwards replied, "Kids just say the darndest things. They're kids."

After hearing all of this evidence, Superior Court Judge Mary E. Greene concluded that Edwards had been living at the Knik–Goose Bay residence, but she also found that Edwards had been alone with the children for a substantial part of the night when Officer Achee and social worker Shumate knocked on the door on the morning of February 22nd:

> *The Court:* Clearly, on the 22nd, ... the kids weren't at school; they had doctor's appointments.... Officer Achee [found] the defendant at [his ex-wife's] house. The stories that were ... given [at that time] were clearly pretty false. And this follow-up story was ... clearly false.... I believe ... that Mr. Edwards had been

there [at the house] for some period of time, and the children were there [too].

Judge Greene then ruled that Edwards had violated his probation—specifically, the condition prohibiting him from living with females under the age of 16. The judge declared that the violation was established "by the fact that Mr. Edwards was [at his ex-wife's residence], perhaps not overnight, but [for] a substantial part of [the] night [of February 21–22, 1999]."

In a separate proceeding in front of the Parole Board, the Board found that Edwards had violated the parole condition that forbade him from having unsupervised contact with children under the age of 18. As a consequence, the Board revoked Edwards's parole.

*Why we reverse the revocation of Edwards's probation*

■ Edwards does not contest the Parole Board's revocation of his parole. He acknowledges that the evidence, viewed in the light most favorable to the State, establishes that he had unsupervised contact with his children during the night of February 21–22, 1999—conduct that was expressly forbidden by the conditions of his parole. Edwards argues, however, that this evidence does not establish a violation of his *probation*. He points out that the relevant probation condition prohibited different conduct: "living" with an underage female.

We agree with Edwards. Judge Greene found that Edwards spent a substantial portion of one night at his ex-wife's residence. This conduct does not constitute "living with" the people at that residence (using any normal definition of "live with"). Thus, Judge Greene's factual finding does not support her conclusion that Edwards violated this condition of his probation.

*Why we nevertheless uphold Judge Greene's decision to impose more restrictive conditions of probation on Edwards*

■ After Judge Greene found that Edwards had violated his conditions of probation, she issued an amended judgement that required Edwards to serve 6 months of his previously suspended sentence. At the same

time, she amended the conditions of Edwards's probation by imposing stricter limitations on his contact with minors. In particular, she ordered Edwards "not be in the physical presence (anywhere, any room) of any person under the age of 16 without the presence of a supervisor approved by [his] probation officer in advance of the contact".

We have just concluded that Edwards did not violate his probation. We therefore vacate the portion of the amended judgement requiring Edwards to serve 6 months of his previously suspended sentence. This leaves the question of the amended conditions of probation. Even though Edwards's conduct did not constitute a violation of his existing conditions of probation, could Judge Greene nevertheless revise the conditions of probation to Edwards's detriment—imposing greater restrictions on his contact with minors?

We addressed (but did not resolve) this issue in *Reyes v. State*, 978 P.2d 635 (Alaska App.1999). The defendant in *Reyes* argued that, in the absence of a proven violation of probation, any alteration of a defendant's conditions of probation to the defendant's detriment necessarily violates the double jeopardy clause. In rejecting this argument, we explained that the true issue did not directly involve the double jeopardy clause, but rather was one of substantive law: the question was to identify the circumstances in which Alaska law authorizes a sentencing court to modify the conditions of a defendant's probation.

It practically goes without saying—although the United States Supreme Court expressly said it in *United States v. DiFrancesco*[2]—that the double jeopardy clause is not violated when a sentencing court revokes a defendant's probation and imposes a previously-suspended prison term. In such circumstances, the defendant's sentence has not been "increased" because, from the beginning, it was understood that the defendant's imprisonment would remain suspended only if the defendant abided by the conditions of probation.

... Since the *DiFrancesco* decision, most courts have held (either explicitly or implicitly) that when a defendant challenges a modification of their sentence on double jeopardy grounds, the double jeopardy issue must be resolved by examining the applicable sentencing statutes and deciding whether, from the beginning, the court was authorized to modify the sentence in that way.

*Reyes*, 978 P.2d at 639. The United States Supreme Court reiterated this approach to the double jeopardy problem in *Ralston v. Robinson*, 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981), where the court declared that the rule prohibiting a post-sentencing increase in a defendant's sentence "simply does not apply when [the legislature] has provided a court with the power to modify a sentence in light of changed circumstances".[3]

As we pointed out in *Reyes*, the Alaska legislature clearly "intended probation to be modifiable"—for AS 12.55.090(b) declares that the sentencing court "may revoke or modify any condition of probation, or may change the period of probation".[4] But although probation is designed to be modifiable, we acknowledged that there was "considerable debate" among American jurisdictions "regarding the circumstances in which a court is empowered to modify the conditions of probation to a defendant's detriment".[5]

Some courts hold that, even though there may be good reason to modify the conditions of probation, the conditions of probation can be made more severe only if the sentencing court finds that the defendant has violated the existing conditions of probation. Other courts hold that a sentencing court can make such modifications to a defendant's probation even in the absence of a probation violation, but the record must demonstrate a significant change of circumstances that provides a reasonable

**2.** 449 U.S. 117, 137, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980).

**3.** *Id.*, 454 U.S. at 217 n. 10, 102 S.Ct. at 244 n. 10.

**4.** *Reyes*, 978 P.2d at 639.

**5.** *Id.*

basis for the more severe conditions of probation.

*Reyes,* 978 P.2d at 639 (citations omitted).

We did not have to resolve this debate in *Reyes* because we concluded that, under either standard, the sentencing court had no authority to modify the conditions of Reyes's probation.[6] That is, Reyes had not violated the conditions of his probation, and there was no significant change in circumstances to justify re-evaluation of those conditions. Now we confront this same issue in Edwards's case, and this time we must resolve it— because, as we explain below, we conclude that the evidence presented at Edwards's revocation hearing established a significant change of circumstances.

As the United States Supreme Court indicated in *Ralston v. Robinson,* and as we pointed out in *Reyes,* the question is ultimately one of Alaska sentencing law. A court has no inherent power to suspend sentence and impose probation; any such power must be granted by legislative enactment.[7] In Edwards's case, the particular provision that we must construe is AS 12.55.090(b), which declares that the sentencing court "may revoke or modify any condition of probation, or may change the period of probation".

AS 12.55.090(a) mirrors the fourth paragraph of former 18 U.S.C. § 3651, its federal counterpart at the time of its enactment.[8] However, we have been unable to find any pertinent statutory history on the question presented here: whether an Alaska court can modify a defendant's conditions of probation to the defendant's detriment in the absence of a proven violation of the pre-existing conditions of probation.

Because the statutory history does not yield an answer to our inquiry, we must employ our common-law power to declare the law in the absence of a statutory directive, adopting "the rule of law that is most persuasive in light of precedent, reason, and poli-cy."[9] Having considered this matter, we conclude that Alaska should adopt the "significant change of circumstances" side of the debate.

As we noted in *State v. Staael,* probation is a statutorily authorized method for allowing the conditional release of criminal offenders.[10] Under Alaska law, when a sentencing court decides to grant probation— *i.e.,* when the court allows a defendant to remain at conditional liberty in lieu of serving time in prison—the court has "broad authority to fashion conditions of probation" that are "reasonably related to the probationer's rehabilitation or the protection of the public".[11]

This broad authority derives from the underlying premise of a probationary sentence. A judge who grants probation has expressly or implicitly determined that the goals of affirming community values, rehabilitating the defendant, and protecting the public can be achieved without imprisoning the defendant—that these goals can be achieved by allowing the defendant to remain in the community, subject to conditions.

But because society takes a risk when a defendant is released on probation, our supreme court has acknowledged a sentencing judge's

> clear need . . . to know whether the probationer is conducting his life in a manner which warrants continuation of his present probationary status, or whether because of antisocial conduct the goal of rehabilitation is not being furthered and thus, either a change in the conditions of probation, or incarceration, is necessary in order to protect society.

*State v. Sears,* 553 P.2d 907, 914 (Alaska 1976).

This passage from *Sears* strongly suggests that a sentencing judge should be able to modify the conditions of probation whenever

---

6. *See id.* at 640–41.

7. *See Pete v. State,* 379 P.2d 625, 626 (Alaska 1963).

8. This federal statute was repealed and re-written in 1984. *See* Public Law 98–473, Title II, §§ 212(a)(1), (2), 98 Stat.1987 (1984).

9. *Smithart v. State,* 988 P.2d 583, 586 (Alaska 1999) (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

10. 807 P.2d 513, 516 (Alaska App.1991).

11. *Baum v. State,* 24 P.3d 577, 581–82.

a defendant's post-sentencing conduct establishes a substantial reason to conclude that the current conditions of probation are not adequately ensuring the defendant's rehabilitation or adequately protecting the public. More particularly, this passage suggests that a sentencing court's power to supervise and modify a defendant's probation should not be limited to instances in which the defendant has violated a pre-existing condition.

The facts of Edwards's case illustrate why a sentencing judge might justifiably conclude, even in the absence of a probation violation, that a defendant's current conditions of probation were not adequately ensuring the defendant's rehabilitation or adequately protecting the public, and that a change in the conditions of probation was needed. The pre-existing condition of probation that prohibited Edwards from "living" with a minor female was imposed because Edwards sexually abused his 13–year–old stepdaughter. The sentencing court's concern was to fashion conditions of probation that would prevent or deter Edwards from again engaging in similar criminal conduct.

At the probation revocation hearing, the State presented evidence that Edwards had repeatedly lied about his unsupervised contacts with his 8 year old daughter, and that Edwards had also encouraged or induced his ex-wife and his children to lie about these contacts. Moreover, after Edwards took the stand at the evidentiary hearing and offered a revised exculpatory account of his activities, Judge Greene declared that Edwards's "follow-up story was ... clearly false." That is, Judge Greene essentially found that Edwards committed perjury rather than reveal the truth about his contacts with his daughter. In addition, even though Edwards did not violate the conditions of his probation when he spent unsupervised time with his daughter, he knew that his unsupervised contacts with his daughter violated the conditions of his parole, and he was not deterred.

■ Precedent, reason, and policy lead us to the conclusion that a sentencing court should be able to modify a defendant's conditions of probation to the defendant's detriment (*i.e.*, impose more stringent conditions of probation) when the State proves a "significant change of circumstances"—which we define to mean post-sentencing conduct that establishes a substantial reason to conclude that the current conditions of probation are not adequately ensuring the defendant's rehabilitation or adequately protecting the public.

Using this definition, we affirm Judge Greene's decision to impose stricter conditions of probation on Edwards. Even though the State may have failed to prove that Edwards violated his pre-existing conditions of probation, Judge Greene could reasonably conclude that the evidence presented at the revocation hearing established a significant change of circumstances that justified imposition of new, stricter conditions of probation. Edwards showed himself willing to flout the conditions of his parole to engage in unsupervised contact with his daughter. He showed himself willing to commit perjury to cover up this conduct. And he tried to induce his children to conceal this conduct from the authorities. Judge Greene could properly conclude that Edwards's conduct provided grounds for a significantly altered view of Edwards's potential for rehabilitation and the level of danger that he posed to the public. To paraphrase our supreme court in *Sears*, these facts could reasonably lead Judge Greene to conclude that, given Edwards's "[post-sentencing] antisocial conduct[,] the goal of rehabilitation [was] not being furthered and thus ... a change in the conditions of probation ... [was] necessary in order to protect society."

*Edwards's claim that the new condition of probation is overbroad and unduly restricts his freedom*

■ The new condition of probation imposed by Judge Greene directs Edwards "not [to] be in the physical presence ... of any person under the age of 16 without the presence of a supervisor approved by [his] probation officer in advance of the contact". At oral argument, Edwards claimed that this new condition unduly restricts his liberty—that it is potentially so broad as to prohibit him from walking along the streets, shopping for groceries, eating at restaurants, or engaging in other necessary life activities.

This claim was not briefed. In his briefs to this court, Edwards argued that Judge Greene had no authority to alter the condi-

tions of probation to his detriment. He did not address the further question of whether, assuming that Judge Greene had this authority, she exercised it in a way that unduly infringed Edwards's rights. Because Edwards did not raise this claim until oral argument, he waived it.

*Conclusion*

For the reasons explained here, we RE-VERSE the superior court's decision to re-voke Edwards's probation and impose 6 months of his previously-suspended prison term. At the same time, we AFFIRM the superior court's decision to modify the conditions of Edwards's probation by imposing stricter constraints on Edwards's contact with minors.