**James W. MARUNICH, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8979.**

Court of Appeals of Alaska.

Dec. 22, 2006.

---

18. *See Allain v. State,* 810 P.2d 1019, 1022 (Alaska App.1991).

19. *Id.*

David D. Reineke, Assistant Public Defender, and Barbara K. Brink and Quinlan Steiner, Public Defenders, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

On November 18, 2003, James W. Marunich was sentenced for two separate robberies. Marunich was ordered to serve a total of 6 years in prison, followed by 4 years on probation.

One week later, the superior court issued its written judgements in Marunich's cases. Both of these written judgements included twelve "general conditions of probation" that had not previously been mentioned by the sentencing judge. The question presented in this appeal is whether the superior court illegally increased the severity of Marunich's sentence by adding these conditions of probation.

For the reasons explained here, we conclude that some of these added conditions of probation merely specify certain inherent aspects of being a probationer under the supervision of the superior court and the Department of Corrections. These conditions do not constitute an increase in Marunich's sentence. However, the remainder of the added conditions go beyond the inherent aspects of probation. Accordingly, we vacate these conditions because they constitute an illegal increase in Marunich's sentence.

### The double jeopardy issue raised in Marunich's case

In advance of Marunich's sentencing, the Department of Corrections prepared a pre-sentence report which recommended that Marunich be subject to ten "special conditions" during his term of probation. These ten are the only conditions of probation mentioned in the pre-sentence report.

At the sentencing hearing, the parties discussed the Department's proposed special conditions of probation. Marunich's attorney objected to the wording or the content of several of these special conditions, and the superior court modified five of the special conditions in response to the defense attorney's suggestions. No one mentioned any other "general" conditions of probation.

One week after the sentencing hearing, the superior court issued its written judgements in Marunich's two cases. These written judgements contain twelve "general conditions of probation" that no one had mentioned before.

(In addition, although the parties have not flagged this problem, the written judgements contain two additional "special conditions of probation"—Special Conditions 1 and 2—that are not among the ten special conditions mentioned in the pre-sentence report and discussed at the sentencing hearing.)

As a general rule, when the terms of a defendant's sentence as stated in the court's written judgement differ from the terms of the sentence announced orally by the sentencing judge at the defendant's sentencing hearing, the oral sentence controls. *Herrin v. State*, 93 P.3d 477, 478 (Alaska

App.2004); *Graybill v. State*, 822 P.2d 1386, 1388 (Alaska App.1991). One of the chief rationales of this rule is to enforce the constitutional prohibition on after-the-fact increases in a defendant's sentence.

We explained this point in *Alvin v. State*, 42 P.3d 1156 (Alaska App.2002):

> The double jeopardy clause generally forbids a court from reconsidering a sentence and altering it to the defendant's disadvantage. If the law allowed the court to amend a written judgement whenever the sentencing judge's original description of the defendant's sentence was ambiguous or unclear, or whenever for any other reason the court later decided that the written judgement did not accurately describe the intended sentence, this power could easily serve as a screen for a judge's decision to reconsider the defendant's sentence and increase it. To make sure that the power of amendment is not misused in this fashion, ... *Shagloak [v. State*, 582 P.2d 1034 (Alaska 1978),] established two rules to restrict it.
>
> First, when the court and the parties seek to ascertain the sentencing judge's intention, they are confined to the contemporaneous sentencing record. Neither the State nor the court can rely on the sentencing court's subsequent explanation of its subjective purpose. Second, any reasonable debate regarding the sentencing judge's intention must be resolved in favor of the defendant. The written judgement can be amended to reflect a more severe sentence only when the contemporaneous record establishes beyond a reasonable doubt that the sentencing judge intended to impose this sentence.

*Alvin*, 42 P.3d at 1159 (footnotes and internal quotations omitted).

After Marunich realized that his written judgements contained conditions of probation that had not been proposed in the pre-sentence report or discussed at the sentencing hearing, he filed a motion under Alaska Criminal Rule 35(a), asking the superior court to correct the written judgements by deleting these conditions of probation. Marunich argued that the additional conditions

of probation constituted an improper after-the-fact increase in his sentence.

The superior court ruled that the general conditions of probation set forth in the written judgements were impliedly "part and parcel" of Marunich's agreement to be placed on supervised probation—that Marunich's probation would be "meaningless" without these general conditions. On this basis, the court declined to modify the written judgements.

(As explained above, the written judgements also contain two "special conditions" of probation that are not among the ten special conditions proposed at Marunich's sentencing hearing. Marunich did not mention this problem in his Rule 35(a) motion, and the superior court did not address this problem in its ruling.)

*The conditions of probation that are at issue in this appeal*

■ In Alaska, probationers have an implicit obligation to obey the law, and a probationer's violation of the law can constitute good cause to revoke their probation, even when that violation of law does not run afoul of any of the probationer's specific conditions of probation. *See Wozniak v. State,* 584 P.2d 1147, 1148 (Alaska 1978); *Benboe v. State,* 738 P.2d 356, 359–360 (Alaska App.1987); *Gant v. State,* 654 P.2d 1325, 1326–27 (Alaska App.1982).

■ Marunich now concedes that three of his twelve general conditions of probation are valid because they merely restate his obligation to obey the law: General Condition No. 5 ("At no time have ... control [of] a concealed weapon, a firearm, or a switchblade or gravity knife."); General Condition No. 7 ("Make a reasonable effort to support your legal dependents."); and General Condition No. 9 ("Comply with all municipal, state[,] and federal laws.").

In addition, two more of Marunich's general conditions of probation are either duplicative of, or are rendered superfluous by, the special conditions of probation that Marunich concedes were validly imposed.

■ General Condition No. 3 requires Marunich to "[m]ake a reasonable effort to se-cure and maintain steady employment", and directs Marunich to "notify a probation officer ... as soon as possible" should he become unemployed. This condition is essentially duplicative of Special Condition No. 11, which requires Marunich to "[m]aintain verifiable full-time employment, unless engaged full time in approved treatment and/or education", and to "provide proof of employment upon request by [his] probation/parole officer".

■ General Condition No. 8 directs Marunich to refrain from "consum[ing] intoxicating liquor to excess". This general condition is superfluous in Marunich's case, because Special Condition No. 3 prohibits Marunich from "us[ing] or possess[ing] alcohol", and directs him "not [to] enter or remain inside [ ] places where [alcohol] is the main item for sale".

Finally, another of Marunich's general conditions of probation (No. 11) is partially covered by his special conditions of probation.

General Condition No. 11 directs Marunich to "submit [upon the request of a probation officer] to a search of [his] person, personal property, residence[, or] any vehicle in which [he] may be found for the presence of contraband". This general condition of probation is analogous to Special Condition No. 8, which directs Marunich to "[s]ubmit to a search of his person, personal property, residence, vehicle, or any vehicle [of] which [he] has control, for the presence of narcotic, hallucinogenic, stimulant, depressant, amphetamine, barbiturate, or other drugs, drug paraphernalia[,] or alcohol, at the request of the probation/parole officer or any law enforcement officer".

The searches authorized by Special Condition No. 8 are limited to drugs and alcohol, so *Special Condition No. 8 is narrower than General Condition No. 11,* which purports to authorize searches for any type of "contraband". Moreover, Special Condition No. 8 is *narrower than General Condition No. 11 in one other respect:* Special Condition No. 8 authorizes searches of vehicles owned by Marunich or under his control, while General Condition No. 11 purports to authorize searches of any vehicle in which Marunich

may be found. But to the extent that General Condition No. 11 authorizes searches for drugs and alcohol, and to the further extent that it is limited to vehicles owned or controlled by Marunich, General Condition No. 11 is redundant of Special Condition No. 8.

(We note that Special Condition No. 8 is broader than General Condition No. 11 in one respect: Special Condition No. 8 purports to require Marunich to submit to searches, not just at the request of his probation officer, but at the request of "any law enforcement officer". This portion of Special Condition No. 8 is illegal. *See Roman v. State*, 570 P.2d 1235, 1242 n. 20 (Alaska 1977).)

Thus, of the twelve general conditions of probation that appear in Marunich's written judgements, seven are actually in dispute in this appeal:

- General Condition No. 1, which requires Marunich to report to the probation office of the Department of Corrections on the business day following his release from prison;
- General Condition No. 2, which requires Marunich to secure written permission from a probation officer before changing his employment or his residence, or before leaving the region of his residence;
- General Condition No. 4, which requires Marunich to report in person to his probation officer between the first and tenth of every month (or as otherwise directed), and to complete a written report if his probation officer happens to be out of the office when Marunich comes to report;
- General Condition No. 6, which forbids Marunich from knowingly associating with any person who is on probation or parole, or who has been convicted of a felony, unless Marunich obtains permission from a probation officer;
- General Condition No. 10, which requires Marunich to report all purchases, sales, and trades of motor vehicles;
- General Condition No. 11, to the extent that it authorizes broader searches than the searches for drugs and alcohol authorized by Special Condition No. 8; and

- General Condition No. 12, which requires Marunich to "[a]bide by any special instructions given by the [sentencing] court or any of its duly authorized officers, including probation officers of the Department of Corrections".

In addition, as we explained above, Marunich's attack on these general conditions of his probation also raises a question concerning the validity of Special Conditions Nos. 1 and 2—because these special conditions are not among the ten that were presented during Marunich's sentencing proceedings.

- Special Condition No. 1 requires Marunich to immediately submit to a medical analysis of his blood or urine for the presence of controlled substances when directed to do so by a probation officer.
- Special Condition No. 2 requires Marunich to allow a health care professional to collect blood or oral swab samples from him "for the [state] DNA Registration System", and it further requires Marunich to "provide oral [swab] samples when requested by a correctional, probation, parole[, or] peace officer".

*Why we conclude that the superior court's post-sentencing imposition of General Condition No. 11 and Special Condition No. 1 was an illegal increase in Marunich's sentence, thus violating his rights under the double jeopardy clause*

Although the prohibition against double jeopardy generally forbids an after-the-fact increase in a defendant's sentence, certain types of sentencing provisions can be altered to the defendant's detriment after the sentencing hearing. We speak here of sentencing provisions which, by nature, are conditional or open-ended.

For example, if the sentencing court suspends some or all of the defendant's term of imprisonment, the double jeopardy clause does not forbid the court from later ordering the defendant to serve the previously suspended sentence if the defendant violates the conditions of probation. *United States v. DiFrancesco*, 449 U.S. 117, 137, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980); *Reyes v. State*, 978 P.2d 635, 639 (Alaska App.1999).

Similarly, when an Alaska court places a defendant on probation, AS 12.55.090(b) authorizes the court to later "revoke or modify any condition of [the defendant's] probation", or to "change the period of [the defendant's] probation" (within the 10–year statutory limit).

Of course, a sentencing court may sometimes exercise this authority in the defendant's favor—for example, by revoking a previously imposed condition of probation, or by shortening the defendant's term of probation. But the sentencing court can also exercise this authority to the defendant's detriment if the State proves that the defendant has violated the conditions of probation, or if the State proves a "significant change of circumstances"—*i.e.*, any other post-sentencing conduct that establishes a substantial reason to conclude that the defendant's current conditions of probation are not adequately ensuring the defendant's rehabilitation or adequately protecting the public. *Edwards v. State*, 34 P.3d 962, 969 (Alaska App.2001). And because the legislature intended for probation to be modifiable in this way, such a post-sentencing alteration of the conditions or term of probation does not violate the double jeopardy clause, even when it is to the defendant's detriment. *Id.*, 34 P.3d at 967–68.

Marunich acknowledges this, but he argues that the superior court violated AS 12.55.090(b)—as construed in *Edwards*—by imposing the twelve general conditions of probation when there was no proof that Marunich had violated his pre-existing conditions of probation (*i.e.*, Special Conditions 3 through 12) or that Marunich had engaged in any other post-sentencing conduct that would constitute a "significant change of circumstances".

For the reasons explained in the next section of this opinion, we conclude that the superior court violated Marunich's rights when the court imposed General Conditions 1, 2, 4, 6, 10, and 12—but not his rights under the double jeopardy clause. Rather, the superior court violated Marunich's due process rights to notice of the proposed conditions of probation and an opportunity to be heard regarding them.

We do, however, agree with Marunich that the superior court violated his rights under the double jeopardy clause when the court imposed General Condition No. 11, to the extent that this condition authorizes searches that were not already authorized by Special Condition No. 8.

■■■■ Under Alaska law, a sentencing court must expressly authorize, and must find a case-specific basis for, any condition of probation that requires the probationer to submit to warrantless searches for drugs, weapons, or other items. *Roman v. State*, 570 P.2d 1235, 1243 (Alaska 1977); *State v. Thomas*, 133 P.3d 684, 685 (Alaska App. 2005). At Marunich's sentencing hearing, the superior court found good reason to require Marunich to submit to the searches specified in Special Condition No. 8. But to the extent that General Condition No. 11 purports to authorize searches beyond the scope of Special Condition No. 8, the post-sentencing imposition of General Condition No. 11 constitutes an improper after-the-fact alteration of Marunich's sentence to his detriment, in violation of *Edwards*.

■■■■ For the same reason, we conclude that the post-sentencing imposition of Special Condition No. 1 (which requires Marunich to submit to medical testing of his blood or urine for the presence of controlled substances) violated Marunich's rights under *Edwards*.

■■■■ At first glance, this same objection seemingly applies with equal force to Special Condition No. 2. Like General Condition No. 11 and Special Condition No. 1, Special Condition No. 2 was imposed after Marunich's sentencing, and it authorizes the seizure of substances (blood and oral samples) from Marunich's body.

But Special Condition No. 2 is mandated by statute. Under AS 12.55.100(d), whenever a court orders probation for a defendant convicted of an offense covered by Alaska's DNA registration system (*see* AS 44.41.035), "the court shall order the defendant, as a condition of probation, to submit to the collection of (1) [blood and/or oral] samples when requested by a health care professional

acting on behalf of the state to provide the sample or samples; or (2) an oral sample when requested by a juvenile or adult correctional, probation, or parole officer, or a peace officer."

It is true that the superior court neglected to impose this condition of probation at Marunich's sentencing hearing. But Marunich's sentence was illegal without this condition. Thus, the superior court was authorized under Criminal Rule 35(a) to amend the judgement to include this mandated condition of probation.[1]

Nevertheless, an examination of AS 12.55.100(d) shows that Special Condition No. 2 is worded in a potentially misleading way.

As currently worded, Special Condition No. 2 requires Marunich to "[p]rovide blood and oral samples for the DNA Registration System when requested to do so by a health care professional acting on behalf of the state", and it further requires Marunich to "provide oral samples when requested by a correctional, probation, parole[, or] peace officer". But under AS 12.55.100(d), *both* of the two types of tissue sampling described in Special Condition No. 2—that is, (1) the collection of blood or oral swab samples by a health care professional, and (2) the collection of oral swab samples by a corrections officer, a probation officer, or a peace officer—may only be performed for the limited purpose of providing data for the state DNA registration system.

Thus, the phrase "for the DNA Registration System" should appear twice in Special Condition No. 2—both in the middle of the first clause and in the middle of the second clause—to clarify that this phrase limits *all* of the tissue sampling authorized by this special condition of Marunich's probation. Specifically, the second clause of Special Condition No. 2 should read "provide oral samples for the DNA Registration System when requested by a correctional, probation, parole[, or] peace officer". We direct the superior court to modify the wording of Special Condition No. 2 in this manner.

*Why we conclude that the superior court's post-sentencing imposition of General Conditions 1, 2, 4, 6, 10, and 12 poses no double jeopardy problem, but does pose a due process problem*

As we described in the preceding section of this opinion, the double jeopardy clause does not forbid the post-sentencing alteration of those facets of a defendant's sentence which are, by nature, conditional or open-ended. And, as we explained in *Reyes v. State,* the question of whether a particular facet of the defendant's sentence is mutable hinges on the provisions of state law defining that aspect of sentencing:

> [In *United States v.*] *DiFrancesco* [, the United States Supreme Court] held that, for purposes of the federal double jeopardy clause, a criminal sentence does not have the same "finality" as a verdict of acquittal. Thus, ... legislatures may grant courts significant power to re-examine criminal sentences—and modify them to the defendant's detriment—without defeating the defendant's "legitimate expectations" of finality. Since the *DiFrancesco* decision, most courts have held (either explicitly or implicitly) that when a defendant challenges a modification of their sentence on double jeopardy grounds, the double jeopardy issue must be resolved by examining the applicable sentencing statutes and deciding whether, from the beginning, the court was authorized to modify the sentence in that way.

*Reyes,* 978 P.2d at 639 (footnotes omitted).

When we examine the Alaska statutes and court decisions defining probation and the authority of the Department of Corrections to supervise probationers, we conclude that the remaining six "general conditions of probation" in Marunich's case—General Conditions 1, 2, 4, 6, 10, and 12—are the type of supervisory requirements that can permissibly be imposed by the Department, either at or after sentencing.

Alaska law—specifically, AS 33.05.080(2)—defines "probation" as "a procedure under which a defendant, found guilty of a crime ..., is released by the superior court subject

---

1.  *See Smith v. State,* 892 P.2d 202, 203–04 (Alaska App.1995); *Dunham v. Juneau,* 790 P.2d 239, 240–41 (Alaska App.1990); *State v. LaPorte,* 672 P.2d 466, 468–69 & n. 6 (Alaska App.1983).

to conditions imposed by the court and subject to the supervision of the probation service [of the Department of Corrections] as provided in [AS 33.05]." Thus, any offender who is placed on probation by the superior court is automatically subject to the supervision of the Department of Corrections.

AS 33.05.040 defines the duties of probation officers with respect to the persons under their supervision. This statute declares that a probation officer shall "keep informed concerning the conduct and condition of each probationer under the [officer's] supervision" [2] and shall "use all suitable methods, not inconsistent with the conditions imposed by the court, to aid probationers and to bring about improvements in their conduct and condition".[3]

On this point, it is important to distinguish (a) the sentencing court's power to impose conditions of probation from (b) the Department of Corrections' statutory authority to supervise a defendant's probation.

Many states, as well as the federal government, have statutes or court rules that contain lists of mandatory conditions of probation (ones that a sentencing court must impose), supplemented by lists of permitted or suggested conditions of probation. See, for example, Section 5B1.3 of the United States Sentencing Guidelines (found in Title 18 of the United States Code).

Alaska law, on the other hand, does not go to these lengths to define a sentencing court's authority to impose conditions of probation. AS 12.55.080 simply states that the court can "place the defendant on probation ... upon the terms and conditions [that] the court considers best". And, for the most part, the only limitation on a sentencing court's authority to impose conditions of probation is the test announced by our supreme

court in *Roman v. State:* a condition of probation must be "reasonably related to the rehabilitation of the offender and the protection of the public[,] and must not be unduly restrictive of [the offender's] liberty." 570 P.2d at 1240.

AS 12.55.100(a) does list six specific conditions of probation that a sentencing court is permitted to impose. But this has never been interpreted to be an exclusive list. Many of the provisions of AS 12.55.100(a) were enacted in response to appellate court decisions holding or suggesting that a sentencing court does not have the authority to impose such a condition of probation in the absence of authorizing legislation.[4]

Similarly, when the Alaska Legislature defined the Department of Corrections' supervisory authority over probationers, the legislature used open-ended language rather than specifying discrete powers: AS 33.05.040(2) simply declares that probation officers shall "keep informed concerning the conduct and condition of each probationer under [their] supervision", while AS 33.05.040(3) states that probation officers shall "use all suitable methods, not inconsistent with the conditions imposed by the court, to aid probationers and to bring about improvements in their conduct and condition".

Just as the Alaska Supreme Court has recognized that the superior court has extensive authority under AS 12.55.080 to fashion and impose conditions of probation, the court has also recognized that probation and parole officers have extensive inherent authority in the day-to-day management of the probationers and parolees under their supervision.

In *Soroka v. State*, 598 P.2d 69, 71 (Alaska 1979), the supreme court upheld a probation officer's warrantless entry into a probationer's residence as a supervisory "visit". That

2. AS 33.05.040(2).

3. AS 33.05.040(3).

4. *See Boyne v. State*, 586 P.2d 1250, 1251 (Alaska 1978) (holding that, in the absence of express legislative authorization, a sentencing court could not, as a condition of probation, require a defendant to spend time in jail or another institutional confinement); *Demers v. State*, 42 P.3d 1, 2 (Alaska App.2002) (holding that a sentencing

court had no authority to order restitution for the value of the labor volunteered by people who came to a crime victim's assistance); *Hester v. State*, 777 P.2d 217, 218–19 (Alaska App.1989) (holding that, in the absence of legislative authorization, a sentencing court could not delegate the authority to select an in-patient treatment program for a defendant, nor delegate the authority to specify the length of time that the defendant is obliged to remain in that treatment program).

is, the supreme court appears to have recognized a probation officer's common-law authority to non-forcibly enter a probationer's residence for purposes of supervising the probationer. (Federal courts have likewise recognized a probation officer's inherent authority to conduct home visits.[5])

And in *Division of Corrections v. Neakok,* 721 P.2d 1121, 1130 (Alaska 1986), the supreme court ruled that the State of Alaska can be held civilly liable if the Department of Corrections is negligent in its supervision of parolees—that is, if corrections personnel fail to exercise due care in supervising parolees and in protecting foreseeable victims from parolees who the Department knows, or reasonably should know, to be dangerous.[6] The supreme court's holding in *Neakok* implicitly rests on the premise that the Department of Corrections has extensive authority to check on, and to regulate the conduct of, the offenders entrusted to the Department's supervision.

Similarly, in *Dayton v. State,* 120 P.3d 1073 (Alaska App.2005), this Court implicitly recognized the discretionary authority of probation officers to regulate the conduct of the offenders entrusted to their supervision.

The defendant in *Dayton* challenged the legality of one of his conditions of probation—a condition that required him to "[a]bide by any special instructions given [to him] by . . . probation officers". 120 P.3d at 1084. Dayton argued that this condition of probation constituted an improper delegation of authority to the Department of Corrections—because, theoretically, a probation officer's instruction might violate Dayton's constitutional rights, or because the instruction might place such a substantial burden on Dayton as to amount to a new condition of probation, outside the ones imposed by the sentencing court. *Id.*

We upheld this condition of probation because, despite the wording of the condition,

Dayton retained the right to challenge any probation officer's instruction that was not "appropriate and well adapted to fulfilling the objectives of probation", or any instruction that Dayton believed "abridge[d] his rights or exceed[ed] the authority of the Department of Corrections". *Id.* at 1084. Implicit in our ruling is the premise that probation officers normally have considerable latitude in directing the behavior of the probationers under their supervision.

As we noted above, AS 33.05.080(2) states that all defendants placed on probation by the superior court are "subject to the supervision of the probation service [of the Department of Corrections]". And AS 33.05.040—the statute that governs the duties and authority of probation officers—states that probation officers shall "keep informed concerning the conduct and condition of each probationer under [their] supervision" and shall "use all suitable methods, not inconsistent with the conditions imposed by the court, to aid probationers and to bring about improvements in their conduct and condition".

Neither we nor the Alaska Supreme Court has explicitly construed these statutes regarding the scope of a probation officer's authority to direct the conduct of the probationers assigned to them. However, the expansive wording of AS 33.05.040 and the decisions in *Soroka, Neakok,* and *Dayton* suggest that probation officers have a certain inherent authority to supervise and control the conduct of probationers.

This is not to say that AS 33.05.040 should be interpreted to give probation officers the same authority that a judge has when imposing conditions of probation at a defendant's sentencing. For example, even though probation officers had the authority at common law to order a probationer to

---

5. *See United States v. Rea,* 678 F.2d 382, 387 (2nd Cir.1982); *United States v. Workman,* 585 F.2d 1205, 1208 (4th Cir.1978); *United States v. Trzaska,* 866 F.Supp. 98, 101–02 (E.D.N.Y.1994).

6. The *Neakok* decision was recently limited or clarified by *Department of Corrections v. Cowles,* 151 P.3d 353, 2006 WL 3691725, Alaska Opinion

No. 6082 (December 15, 2006). In *Cowles,* the supreme court held that the State is immune from liability for its "planning" decisions in supervising parolees, but that the State can be held liable for Department of Corrections employees' negligent "operational" decisions in supervising parolees.

submit to warrantless searches,[7] Alaska law now guarantees a greater level of protection to probationers and parolees: the authority to conduct warrantless searches must be explicitly granted, on a case-by-case basis, by the sentencing judge or the Parole Board.[8]

▮▮▮ Nevertheless, in furtherance of the Department of Corrections' statutory duty to supervise felony probationers, we conclude that AS 33.05.040 gives Alaska probation officers a certain degree of authority to require, restrict, or prohibit particular conduct on the part of probationers—even when these requirements, restrictions, and prohibitions are not expressly included in the conditions of probation imposed by the judge at sentencing.

Marunich's case does not require us to define the precise scope of this authority. Instead, we limit our attention to the requirements and restrictions that Marunich challenges on appeal—in particular, the requirements that he keep the Department apprised of his whereabouts and his associates, that he report to the Department on a regular basis, and that he inform the Department of significant changes in his circumstances. We conclude that these are the types of conditions that a probation officer could place on Marunich even in the absence of an express court order.

▮▮▮ General Condition No. 1 requires Marunich to report to the probation office of the Department of Corrections on the business day following his release from prison. General Condition No. 2 requires Marunich to secure written permission from his probation officer before changing his employment or his residence, or before leaving the region of his residence. General Condition No. 4 requires Marunich to report in person to his probation officer between the first and tenth of every month (or as otherwise directed), and to complete a written report if his probation officer happens to be out of the office when Marunich comes to report. General

Condition No. 6 forbids Marunich from knowingly associating with any person who is on probation or parole, or who has been convicted of a felony, unless Marunich obtains permission from his probation officer. General Condition No. 10 requires Marunich to report all purchases, sales, and trades of motor vehicles. And General Condition No. 12 requires Marunich to abide by any special instructions given by the sentencing court or the probation officers of the Department of Corrections.

We hold that all of these requirements, restrictions, and prohibitions fall within the ambit of the Department of Corrections' statutory duty and authority to supervise probationers. Thus, Marunich would have no double jeopardy complaint if the Department had imposed these conditions on Marunich when he left prison and commenced his probation. It follows that Marunich's double jeopardy rights were not violated when the superior court added these conditions in its written judgement following the sentencing hearing.

This is not to say, however, that the superior court followed proper procedure when it imposed these conditions.

▮▮▮ Under AS 33.05.040(3), conditions of probation imposed by the Department of Corrections must not be inconsistent with the conditions imposed by the sentencing court. Moreover, these conditions must satisfy the *Roman* test—that is, they must be "reasonably related to the rehabilitation of the offender and the protection of the public", and they "must not be unduly restrictive of [the offender's] liberty."[9] In addition, conditions of probation "must be sufficiently precise and unambiguous to inform the probationer of the conduct that [he must engage in or refrain from] so that he may retain his liberty." *Rich v. State*, 640 P.2d 159, 162 (Alaska App.1982).

---

7. *See Gonzales v. State*, 586 P.2d 178, 180–81 (Alaska 1978).

8. *Roman v. State*, 570 P.2d 1235, 1243 (Alaska 1977); *State v. Thomas*, 133 P.3d 684, 685 (Alaska App.2005).

9. *Roman*, 570 P.2d at 1240.

■ Accordingly, probationers have a due process right to reasonable advance notice of any conditions imposed by their probation officer, as well as a right to be heard—that is, a right to seek judicial review—if the probationer believes that a proposed condition is unlawful or unreasonable. *See Dayton v. State*, 120 P.3d 1073, 1084 (Alaska App.2005) (holding that probationers have the right to seek judicial review of any special instruction given by their probation officer pursuant to the conditions of probation). *See also Smith v. Department of Corrections*, 872 P.2d 1218, 1224 (Alaska 1994) (holding that parolees have due process rights with respect to conditions of parole imposed by the Parole Board).

Generally speaking, if the Department of Corrections (or the sentencing court itself) proposes conditions of probation in advance of, or at, the defendant's sentencing hearing, the defendant will have a chance to respond to the proposed conditions, and thus the defendant's due process rights will be satisfied.

Alternatively, if the Department of Corrections proposes conditions of probation following the defendant's sentencing, in furtherance of its duty and authority to supervise the defendant, the defendant has recourse to the superior court. The defendant can seek court review of the Department's requirements, and can ask the court to modify or set aside any unlawful or unreasonable requirement under AS 12.55.090(b)-the statute that authorizes the court to "revoke or modify any condition of probation".

This statute not only empowers the superior court to revoke or modify conditions of probation that the court itself has previously imposed, but also empowers the court to revoke or modify conditions imposed by the Department of Corrections. As the Arizona Court of Appeals explained when it addressed Arizona Criminal Rule 27.3, Arizona's counterpart to AS 12.55.090(b),

> [This rule] provides for modification and clarification of conditions and regulations [of probation]. As pointed out in the Comment to [the rule], its purpose is to protect the probationer from arbitrary conditions or regulations, to provide a formal means short of violation and revocation proceedings for the probationer to have ambiguous conditions or regulations clarified, to provide added flexibility to the probation process, and on the suggestion of probation officials, to provide a means for invoking the authority of the court when the probationer seems to be slipping toward a revocation without risking that ultimate sanction.

*State v. Heasley*, 23 Ariz.App. 345, 533 P.2d 556, 558 (1975).[10]

■ The problem in Marunich's case, however, is that the Department did not propose General Conditions 1, 2, 4, 6, 10, and 12. Rather, the superior court imposed these conditions—without prior notice to Marunich, and without giving Marunich an opportunity to be heard. The court therefore violated Marunich's due process rights.

It may well be that these conditions are typical requirements of probation in this state, or at least in the Third Judicial District. Nevertheless, Marunich was entitled to advance notice of these requirements and an opportunity to argue that, under the circumstances of his case, one or more of these requirements are unreasonable or infringe his rights.

Accordingly, we direct the superior court to give Marunich an opportunity to object to these conditions (if Marunich wishes).

10. Arizona Criminal Rule 27.3 reads: "A probation officer or other person designated by the court may modify or clarify any regulation which he or she has imposed. The court may modify any condition imposed and any regulation imposed by a probation officer, or other person designated by the court, after notice has been provided to the prosecutor and the defendant of proceedings, in which the victim has the right to notice pursuant to Rule 27.11. A probationer, probation officer, the State, or other person designated by the court, at any time prior to absolute discharge, may request the court to modify or clarify any condition or regulation. Additionally, persons entitled to restitution pursuant to a court order, based upon a change of circumstances, may request the court at any time prior to absolute discharge to modify the manner in which restitution is paid. The court may, where appropriate, hold a hearing on any such request. A written copy of any modification or clarification shall be given to the probationer."

*Conclusion*

Of the conditions of probation listed in Marunich's written judgements, we uphold General Conditions 5, 7, and 9 because Marunich concedes that these three conditions merely restate his obligation to obey the law.

We strike General Condition No. 3 because it is duplicative of Special Condition No. 11. We strike General Condition No. 8 because it is superfluous, given Special Condition No. 3.

We strike Special Condition No. 1 because it is illegal. This condition of probation purports to authorize searches of Marunich's person, but it was imposed in violation of *Roman v. State*. That is, the sentencing court did not expressly authorize these searches in its sentencing remarks, nor did the court find that there was a case-specific need for these searches.

We strike General Condition No. 11 because it, too, is illegal under *Roman* to the extent that it purports to authorize searches that were not already authorized by Special Condition No. 8, and because it is superfluous to the extent that it purports to authorize searches already authorized by Special Condition No. 8.

We uphold Special Condition No. 2, even though it was imposed without notice to Marunich after Marunich's sentencing, because this condition of probation is mandated by AS 12.55.100(d). However, we direct the superior court to amend the wording of Special Condition No. 2 in the manner described in this opinion, so that it unambiguously applies only to the searches mandated by AS 12.55.100(d).

With regard to General Conditions 1, 2, 4, 6, 10, and 12, we direct the superior court to give Marunich an opportunity to voice any objections he may have to these conditions.

Finally, even though Marunich has not challenged Special Condition No. 8, we take notice that this condition of Marunich's probation is illegal to the extent that it purports to require Marunich to submit to searches, not just at the request of his probation officer, but at the request of "any law enforcement officer". *See Roman v. State*, 570 P.2d 1235, 1242 n. 20 (Alaska 1977). Accordingly, we direct the superior court to amend Special Condition No. 8 by deleting the concluding phrase, "or any law enforcement officer".

In sum: Marunich is entitled to be heard regarding General Conditions 1, 2, 4, 6, 10, and 12. With regard to the remaining conditions of probation discussed in this opinion, (a) we affirm the judgement of the superior court as to General Conditions 5, 7, and 9; (b) we reverse the judgement of the superior court as to General Conditions 3, 8, and 11, and Special Condition 1; and (c) we direct the superior court to amend Special Conditions 2 and 8 as explained in this opinion.